BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
ADAM M. BUCCI (327312)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com
abucci@bholaw.com

Attorneys for Plaintiff

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III
H. CLAY BARNETT, III*
J. MITCH WILLIAMS*
DYLAN T. MARTIN*
TRENTON H. MANN*
218 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@beasleyallen.com
Trent.Mann@BeasleyAllen.com

*  *pro hac vice forthcoming*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVANNAH MESSENGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA MOTOR COMPANY LIMITED,<br><br>Defendants. | Case No. 2:26-cv-00295<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1    Plaintiff Savannah Messenger ("Plaintiff"), individually and on behalf of the

2 other members of the below-defined statewide class, which she respectively seeks to

3 represent ("Class"), hereby alleges against Defendants American Honda Motor Co.,

4 Inc. and Honda Motor Company Limited (together, "Honda"), upon personal

5 knowledge as to herself and her own acts, and as to all other matters upon information

6 and belief, based upon the investigation made by the undersigned attorneys, as

7 follows:

8    **INTRODUCTION**

9    1.    For decades, Honda has marketed themselves as manufacturers of safe,

10 reliable, and fuel-efficient automobiles. As a result, consumers reasonably expect,

11 based on their long-term advertising and branding, that Honda and Acura vehicles

12 will operate without major mechanical failure during their expected useful lives.

13    2.    Honda designs, manufactures, tests, sells, leases and warrants certain

14 Honda and Acura motor vehicles equipped with substantially the same 3.5-liter

15 engines (the "Engine(s)") that are defective.

16    3.    The Defect (defined below) impacts owners or lessees of model year

17 2014-2020 Acura RLX, 2015-2020 Acura TLX, 2016-2020 and 2022-present Acura

18 MDX, 2016-2022 Honda Pilot, 2018-present Honda Odyssey, model year 2019-2025

19 Honda Passport, and 2017-present Honda Ridgeline vehicles equipped with the 3.5-

20 liter V6 engine (the "Class Vehicles").[1]

21    4.    All Class Vehicles are outfitted with the defective Engines and thus,

22 suffer from the same defect. The Class Vehicles share the same or substantially similar

23 3.5-liter V6 Engine family architecture and the same or substantially similar rotating-

24 assembly design and specifications relevant to the Defect, including the

25 crankshaft/connecting-rod-bearing interface. Any differences in vehicle platform,

26

27    _____

28    [1]    Plaintiff reserves the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles.

1

CLASS ACTION COMPLAINT

trim, or calibration are immaterial to whether the Defect exists and manifests as alleged.

5.     The Engines in the Class Vehicles all suffer from design and/or manufacturing defects that cause premature wear and damage to the Engines' internal components, including but not limited to, the connecting rods, crankshaft, pistons and bearings (i.e., the "Rotating Assembly"), and total engine failure.

6.     The Defect creates serious drivability and safety issues, such as engine misfire, engine noise (*e.g.,* valvetrain ticking and rod knock), reduce forward motive power (*e.g.,* "Limp Mode"), hesitated acceleration, engine stall, engine overheat, and risk of fire.

7.     Engines, like the ones installed in the Class Vehicles, are reasonably expected to last for at least 200,000 miles. The Defect is a latent defect that manifests within and outside the warranty period and well within the reasonably expected useful life of both the Class Vehicles and the Engines equipped in them.

8.     Honda knew or was reckless in not knowing about the Defect by at least 2015, based on its pre-sale design and testing, an increase in Defect complaints submitted to the National Highway Traffic Safety Administration ("NHTSA") and Honda and Acura owner forums (both of which Honda monitors), and the correlating increase in warranty claims, as well as other sources.

9.     Honda's knowledge of the Defect was further confirmed when it issued Recall 23V-751 on November 8, 2023, addressing catastrophic engine failure in a limited population of Class Vehicles.

10.    However, the recall was limited in scope and failed to address the underlying Defect present in all Class Vehicles. The recall did not address the underlying design and manufacturing defects relating to Rotating Assembly and/or excessive operating or idling temperatures, leaving many Class Vehicles without an adequate solution to the dangerous Defect.

11.    Honda concealed, and continues to conceal, the true nature and scope of

BLOOD HURST & O' REARDON, LLP

1    the dangerous Defect in its Recall, and other official communications to its dealers,

2    NHTSA, and the public. Honda has not warned Plaintiff and other Class Members

3    that their vehicles suffer from an inherent and potentially catastrophic defect, has not

4    warned its customers or told them not to drive their vehicles, has not provided an

5    adequate fix, and, egregiously, has not issued a comprehensive recall. This dangerous

6    Defect is present in all of the Class Vehicles and exposes vehicle occupants and the

7    driving public to serious safety risks

8         12.    Throughout the relevant period, Honda's marketing of these Class

9    Vehicles, and the Engines equipped therein, was widespread, consistent, and replete

10   with assurances about their safety and dependability. Yet a vehicle whose Engine can

11   suddenly fail under normal driving conditions is inherently unsafe, not merchantable

12   and renders Honda's marketing of the Class Vehicles false and misleading. Honda's

13   uniform and pervasive marketing messages are and were likely to mislead a

14   reasonable consumer acting reasonably under the circumstances, including Plaintiff

15   and Class Members. They were intended to—and did—induce consumers to purchase

16   Class Vehicles at premium prices.

17        13.    The Defect is covered by Honda's warranties, but Honda refuses to

18   honor its warranties.

19        14.    The Defect has diminished the value of the Class Vehicles.

20        15.    Had Plaintiff and the other Class Members known about the Defect, they

21   would not have purchased or leased the Class Vehicles or would not have paid as

22   much to do so.

23        16.    As a result of Honda's omissions, their active concealment, and

24   misleading marketing, Plaintiff and the other Class Members have suffered an

25   ascertainable loss of money, property, and loss in value of their Class Vehicles.

26        17.    Plaintiff, on behalf of herself and the proposed Class (defined below),

27   seeks redress for Honda's egregious and unconscionable misconduct, and asserts

28   claims for: (1) breach of express and implied warranties; (2) fraudulent omission; (3)

*BLOOD HURST & O' REARDON, LLP*

CLASS ACTION COMPLAINT

violations of California's Unfair Competition Law; (4) violations of California's Consumers Legal Remedies Act; and (5) violations of Ohio's Consumer Protection Act.

18.    Plaintiff seeks restitution and damages for all economic losses by Plaintiff and the Class, including benefit of the bargain damages for overpaying for the vehicles at the point of purchase; the cost of diagnosis, repair or replacement of the Engines; costs for future repairs or replacements of the Engines; sale of their vehicles at a loss; and diminished value of their vehicles. Further, Plaintiff seek injunctive relief, including directing Honda repurchase the Class Vehicles, promptly inform Class Members of the Defect and instructing such Class Members to cease driving their vehicles, and ordering Honda to provide free loaner vehicles of comparable make, model, or value to the Class Vehicle each Class member owns or leases until a remedy for the Defect is installed in the Class Vehicles.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one member of the Class is diverse in citizenship from one Defendant and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

20.    This Court has personal jurisdiction over American Honda Motor Company, Inc. because it is a California corporation with its corporate headquarters located in this district.

21.    This Court has personal jurisdiction over Honda Motor Company Ltd. because Honda Motor Company Ltd. has purposefully availed itself of the privilege of doing business within California, including by marketing and selling the Class Vehicles, and exercising jurisdiction over Honda Motor Company Ltd. does not offend traditional notions of fair play and substantial justice.

22.    Venue is proper in this district under 28 U.S.C. § 1391 because American Honda Motor Company, Inc. resides within this district and a substantial part of the

BLOOD HURST & O' REARDON, LLP

events and omission giving rise to Plaintiff's claims occurred within this district.

## PARTIES

**Plaintiff**

23.    Plaintiff Savannah Messenger is located in Orrville, Ohio and is a resident of Ohio.

24.    Plaintiff owns a 2016 Honda Pilot which she purchased used from authorized Honda dealer, Great Lakes Honda located at 43 Pruitt Boulevard in Akron, Ohio on August 29, 2024. The mileage at the time of purchase was 65,835.

25.    Prior to purchasing her Class Vehicle, Plaintiff Messenger reviewed Honda's promotional materials and interacted with at least one sales representative without Honda disclosing the Defect.

26.    Through her exposure and interaction with Honda, Plaintiff Messenger was aware of Honda's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to her decision to purchase her Class Vehicle. When she purchased the vehicle, she believed, based on Honda's marketing message, that she would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Messenger purchased her vehicle did Honda disclose to her that her vehicle was not safe or dependable, or that it was equipped with a defect.

27.    The Defect creates an unreasonable risk of injury to Plaintiff Messenger, Class Vehicle occupants, and others on the road.

28.    On or around April 10, 2025, while driving on public roads, Plaintiff's vehicle's Engine started making a knocking noise. On the same day, Plaintiff took her Class Vehicle to authorized Honda dealer Germain Honda of College Hills at 4600 Cleveland Road in Wooster, Ohio for diagnosis and repair. The authorized Honda dealership identified metal debris consistent with engine bearing material in the oil pan and determined that the Engine needed to be replaced. The Engine had 76,420 miles on the odometer at the time of failure. Germain Honda provided an estimate of

BLOOD HURST & O' REARDON, LLP

$11,874 for the out-of-pocket cost of replacing the Engine. Plaintiff contacted Honda corporate directly to further notify them of the Defect in her Class Vehicle, and she was assigned a case manager. However, Honda corporate then informed Germain Honda that it would not cover the cost of repair or replacement of Plaintiff's Engine. Subsequently, on May 30, 2025, Plaintiff purchased a remanufactured Engine from Speedie Auto Salvage, located at 6995 Eberhart Road N.W., Dover, Ohio for $2,400. Plaintiff then had the remanufactured Engine installed in her Class Vehicle by Auto Tech located at 14833 Back Massillon Road in Orrville, Ohio.

29.     As a result of Honda's misconduct alleged herein, Plaintiff Messenger suffered injury in fact and lost money or property, including out-of-pocket costs to diagnose and replace the Engine and she did not receive the benefit of her bargain for a vehicle marketed as reliable and safe. She purchased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the intrinsic and resale value of Plaintiff Messenger's Class Vehicle.

30.     Had Honda disclosed the Engine Defect, Plaintiff Messenger would not have purchased her Class Vehicle or would not have paid as much to do so.

31.     Plaintiff Messenger would purchase a vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**Defendants**

**A.     Honda Motor Company, Ltd.**

32.     Defendant Honda Motor Company, Ltd. ("HML") is a Japanese corporation, with its principal place of business at 2-1-1, Minami-Aoyama Minato-Ku, 107-8556 Japan, and the parent of Defendant American Honda Motor Company, Inc.

33.     HML through its various entities (including American Honda Motor

Company), designs, manufacturers, markets, distributes, and sells Honda and Acura automobiles across the United States.

**B.  American Honda Motor Company, Inc.**

34.  Defendant American Honda Motor Company, Inc. ("AHM") is a California corporation with its principal place of business in Torrance, California.

35.  AHM is the United States sales and marketing subsidiary of, and is wholly owned by, HML, and is responsible for distributing, marketing, selling, and servicing Honda vehicles in the United States, including the Class Vehicles.

36.  At all relevant times, AHM acted as an authorized agent, representative, servant, employee, and/or alter ego of HML while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Honda vehicles in the United States.

37.  AHM renders services on behalf of HML that are sufficiently important to HML and its sale of vehicles in the United States that HML would perform those services itself if AHM did not exist.

38.  HML controls the public name and brand of AHM, and in consumer transactions, like those with Plaintiff and the proposed class, HML's unified brand and logo serve as its and AHM official seal and signature as to consumers.

39.  HML operates AHM with a unity of interest and owners such that AHM is a mere instrumentality of its parent, HML.

40.  HML and AHM engage in the same business enterprise and share common board members and employees. Upon information and belief, HML has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over AHM's work, including but not limited to the manner of Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Defect.

41.  At all relevant times to this action, HML and AHM manufactured,

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

distributed, sold, leased, and/or warranted the Class Vehicles under the Honda and Acura brand names throughout the United States. Defendants and/or its agents designed, manufactured, and/or installed the defective Engines and/or components in the Class Vehicles. Additionally, Honda developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

### C.    Acura

42.    Acura is a brand and/or division of HML and/or HMA.  HML and HMA employ engineering, legal, compliance, and regulatory personnel to make decisions regarding Acura vehicles.  These employees, on behalf of HML and HMA, ultimately made or ratified the decisions that allowed the subject Acura vehicles to be fraudulently designed, manufactured, marketed, and sold.

### FACTUAL ALLEGATIONS

43.    Honda is one of the world's largest manufacturer of automotive vehicles and designs, manufactures, markets, and sells millions of vehicles worldwide under the Honda and Acura brand names through a network of over 1,344 dealers.[2]

44.    In 2025, Honda sold over 1.3 million vehicles in the United States and reported over $140 billion in revenue for FY2025.[3]

45.    Honda has branded itself as the maker of safe and dependable vehicles and, over the course of many years, has spent millions, if not billions, of dollars on extensive marketing and advertising campaigns to cement the association of safety, reliability and durability with its Honda and Acura brand automobiles, including the

---

[2]    https://www.hondainamerica.com/map/

[3]    https://hondanews.com/en-US/releases/release-5358f3921d2cb16f125 87732b6015185-american-honda-maintains-strong-november-sales-despite-supply-challenges; https://global.honda/en/investors/library/financialresult/main/08/teaserItems3/016/linkList/00/link/FYE202603_2Q_financial_presentation_e.pdf

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

Class Vehicles.

46.    The Defendants collectively designed, engineered, tested, validated, manufactured and placed in the stream of commerce the Class Vehicles equipped with the defective Engines, thereby subjecting Plaintiff and Class Members to an unreasonable risk of death or injury, and damaging Plaintiff and Class Members as further detailed below.

**A.    Overview Of The Engine and The Defect**

47.    To operate as intended and generate power, the Engine in the Class Vehicles relies on a precisely timed event: the combustion of the air-fuel mixture.

48.    Prior to ignition, the piston lowers in the combustion chamber, drawing in a mixture of air and fuel.

49.    The piston then rises, and the air-fuel mixture is compressed.

50.    The Engine in the Class Vehicles features a compression ratio of 11.5:1, meaning the air-fuel mixture is compressed to just one-eleventh point five of its original volume.

51.    Compressing the air-fuel mixture more tightly in this manner increases its temperature and pressure before ignition, resulting in hot spots and premature ignition.

52.    For the Engines to operate properly, the combustion must occur at the optimal moment, which is when the piston is at or very near the top of its travel—Top Dead Center ("TDC").

53.    Once the air-fuel mixture is compressed and the piston is at TDC, the spark plug creates a spark to ignite the air-fuel mixture inside the combustion chamber, which forces the piston down, leveraging the crank pin to create the rotational force of the crankshaft.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

54.    The following graphic depicts this process:



55.    Linking the piston and crank pin is the connecting rod.

56.    Between the connecting rod and the crank pin sits the rod bearings.

57.    The rod bearings create a smooth, low-friction surface so the crankshaft can rotate easily. This is known as the Rotating Assembly.



58.    For the Engines to operate as intended, it is critical for the Engine and its Rotating Assembly, including the connecting rods, crank pins, and crankshaft, to be

10

BLOOD HURST & O' REARDON, LLP

properly designed and manufactured to withstand the environment of the combustion chamber. Across the Class Vehicles, Honda employed the same or substantially similar rotating-assembly design and manufacturing specifications that govern bearing clearances, crankshaft/journal surfaces, lubrication, and load tolerances. The Defect alleged here concerns those shared design/manufacturing features, and therefore presents the same failure mechanism and materially identical safety risks across the Class Vehicles.

59.    When the rod bearing interface fails prematurely, the Engine loses the protective oil film necessary to prevent metal-to-metal contact, leading to abnormal friction and heat, bearing damage and deformation, and ultimately seizure and catastrophic Engine failure (including throwing a connecting rod). This failure mechanism predictably produces the same warning signs and hazards across the Class Vehicles, including abnormal knocking/ticking, reduced power or limp-mode operation, stalling or loss of motive power while driving, overheating, and smoke or fire risk.

60.    The Engines in the Class Vehicles do not operate properly under normal and expected operating conditions. The 11.5:1 compression ratio increases both the pressure and temperature inside the chamber, causing localized areas within the combustion chamber to become significantly hotter than their surroundings and creating hot spots.

61.    Due to the high temperature and hot spots, the air-fuel mixture is ignited prematurely before the piston reaches TDC, resulting in an explosive force that pushes against the piston while it is still moving upward, creating a high-pressure spike inside the combustion chamber.

62.    The spike in pressure applies extra stress on the Rotating Assembly, increases heat, and deteriorates the thin oil film that protects the components, causing direct metal-to-metal contact. This not only produces additional heat, but also accelerates wear and causes damage and deformation within the Rotating Assembly,

including the rod bearings and related components.

63.     As a result of the deformation, the rotating assembly no longer operates as intended, and the Engine in the Class Vehicles starts to knock, vibrate, and lose power.

64.     Ultimately, the Engine in the Class Vehicles suffers substantial internal damage, resulting in seizure and complete engine failure.

**B.      Honda's Knowledge of the Defect and Associated Safety Risks**

65.     Honda fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiff and Class Members the Defect in the Class Vehicles, even though Honda knew or should have known of the design and/or manufacturing defects in the Class Vehicles.

66.     Honda became aware of the Defect through sources not available to Plaintiff and the other members of the Class, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Honda's network of dealers and directly to Honda, aggregate warranty data compiled from Honda's network of dealers, testing conducted by Honda in response to consumer complaints, repair order and parts data received by Honda from Honda's network of dealers and suppliers, its investigation and field analysis of the Defect; and its investigation and root cause analysis of failures in pre-Class Vehicles.

**1.      Pre-Release Testing**

67.     Honda knew or should have known about the Defect from the testing performed on the Engines and their components. Prior to the sale of any of the Class Vehicles, Honda–like any other reasonable Original Equipment Manufacturer ("OEM") seeking to manufacture and sell vehicles on the U.S. market–completed a multitude of analyses and testing that exposed the existence of the Defect.

68.     Honda and its suppliers, perform various pre-production testing on new vehicle components, including most notably Failure Modes and Effects Analysis

BLOOD HURST & O' REARDON, LLP

("FMEA") and Design Validation Plan and Report ("DVP&R").

69.     Honda and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated that the relevant systems or components in the Class Vehicles would lead to failure of the Engines.

70.     FMEA tests methods or modes by which a particular component might fail. It examines the design of each component, the assembly of the part, and whether use in various manners would cause the part or system to fail. For example, in testing the systems at issue here, FMEA testing would explore, among other things, how and under what conditions the Engines and their components could fail, how likely failure was under different conditions, and how likely each condition tested was to occur.

71.     The purpose of the FMEA is to define, based on known and established engineering facts like those asserted by Defendants, potential risks of failures and rank them by severity, likelihood and ability to detect failure. Any conditions resulting in failure, like those associated with the Defect would result in a "high risk" priority and draw additional and more extensive analysis and validation testing during the FMEA and DVP&R phases. Given the reports of Engine failures after sale, these processes were designed to show the various modes of failure caused by the Defect and confirm what Defendants already knew about the Defect.

72.     The DVP&R phase includes an extensive battery of tests and other work necessary to validate the robustness of any design and includes three basic types of testing: bench scale, dynamometer, and vehicle/field testing. This testing is discussed below.

73.     Bench scale testing is component-specific and establishes a strict set of specifications and guidelines to ensure that the component will operate reliably and durably in foreseeable operating conditions. During this phase of testing, the Engine was "bench tested." That is, it was set up on various machinery to simulate certain operating extremities and conditions to confirm whether it meets the necessary

CLASS ACTION COMPLAINT

specifications and guidelines set by the supplier in coordination with Defendants. Discovery is expected to reveal that Defendants received the detailed results of the bench testing and resulting Technical Control Documents (TCDs) which outline the operating limitations of Defendants' Engine along with the potential risks associated with installation in the Class Vehicles, including the Defect. Similarly, discovery is expected to show that bench testing of the Engines confirmed what Defendants already knew about its design choice or its workmanship and materials—that the Engines fail to operate as intended and prematurely fail.

74.    Dynamometer testing is one of the most important types of testing to ensure durability and performance of the powertrain and its components. In the dynamometer test, the powertrain operates under extreme conditions such as maximum temperatures, RPMs, or excessive vibration. Dynamometer testing is intended to demonstrate powertrain robustness and reveal necessary improvements or flaws, such as the Defect. Discovery is expected to confirm that dynamometer testing revealed the Engines were poorly designed and manufactured, suffered from premature degradation, underperformance, and, ultimately, catastrophic failure.

75.    Honda and its suppliers also performed computer and real-world simulations of the systems, including in extreme conditions, to confirm they are meeting the design goals. Honda tested the Engines in actual vehicles, both prototype vehicles and pre-production line vehicles.  In these tests, vehicles are driven through a full range of conditions and extremities that are encountered once a vehicle is sold to the public. These vehicle-specific development tests include mapping extreme operating conditions, which are the kinds of modes that manifest the Defect.

76.    Through the rigors of these three phases of DVP&R testing, Defendants' Engines were exposed repeatedly to conditions that cause the Defect to manifest.

77.    Defendants admit they perform extensive pre-release testing of the Class

CLASS ACTION COMPLAINT

Vehicles before they are sold.[4]

78.    Among other findings, Honda's pre-production testing revealed that: (1) the Rotating Assembly in the Engines are prone to excessive wear and failure under normal operating conditions; (2) deficiencies in the Engine's design led to insufficient lubrication and/or cooling of the rotating assembly; (3) these factors increased the likelihood of premature rotating assembly failure, resulting in catastrophic engine damage; and (4) the Class Vehicles were at significant risk of engine malfunction or failure due to this Defect.

79.    During this testing, Honda learned that the Class Vehicles' Engines grossly underperform and suffer premature internal component damage and total failure. However, due to the costs of redesigning and fixing the Engines, Honda opted to conceal the Defect.

80.    Honda knew or should have known that the Defect was material to owners or lessees of the Class Vehicles and that Plaintiff and Class Members could not reasonably discover the Defect on their own prior to purchasing or leasing the Class Vehicles.

81.    Honda had and continues to have a duty to fully disclose the true nature of the Defect to Plaintiff and Class Members, among other reasons, because the Defect poses an unreasonable safety hazard; because Honda had and has exclusive knowledge or access to material facts about the Class Vehicles' Engines that were and are not known to or reasonably discoverable by Plaintiff and the other members of the Class; and because Honda has actively concealed the Defect from its customers at the time of purchase or repair and thereafter.

82.    Specifically, Honda (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect; (b) failed to disclose, at the time of

BLOOD HURST & O' REARDON, LLP

---

[4]    https://hondainamerica.com/news/honda-proving-center-returns-operation/

purchase or repair and thereafter, that the Class Vehicles and their Engines were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and actively concealed the fact that the Class Vehicles and their Engines were defective, despite the fact that Honda learned of the Defect before it placed the Class Vehicles in the stream of commerce.

83.     The Defect and its associated safety risks were concealed and actively suppressed in order to protect Honda's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disengagement. Consumers were misled into believing their Class Vehicles had different qualities than what they purchased or leased, and as a result, were deprived of economic value, the benefit of their bargain, and overpaid for their Class Vehicles.

84.     At all relevant times, in promotional materials, advertisements, and other representations, Honda and its authorized Dealers maintained that the Class Vehicles were safe, reliable, and made no reference to the Defect. Honda also engaged in a long-term advertising and branding campaign as a reliable vehicle manufacturer. Plaintiff and Class Members, directly, and indirectly, were exposed to, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles and had the reasonable expectation that their Class Vehicle would be safe and reliable. Indeed, these misleading representations about the Class Vehicles' reliability and safety were material to Plaintiff's and Class Members' ultimate decision to purchase or lease the Class Vehicles.

85.     Notwithstanding Honda's superior and exclusive knowledge of the Defect, it failed to disclose the Defect to Plaintiff and Class Members at the time of purchase or lease of the Class Vehicles and made no mention of the Defect in its advertisements, promotional materials, and other representations.

### 2.    Consumer Complaints

86.     Federal law requires Honda to monitor defects that can cause a safety issue and report them within five (5) days to NHTSA. Therefore, Honda regularly

BLOOD HURST & O' REARDON, LLP

monitors NHTSA complaints to meet reporting requirements under federal law. Honda, therefore, has knowledge of the Defect due to the numerous consumer complaints, such as those made to NHTSA, as well as by other means.

87.    Honda has also admitted it routinely monitors these data sources to monitor product performance. *See In re Honda Idle Stop Litigation*, 22-cv-04252-MCS-SK (C.D. Cal.), Doc. No. 137-1, Page ID #:4744.

88.    Consumers who purchased or leased Class Vehicles from Honda have filed a significant number of complaints with NHTSA reporting and detailing the defect in the Engines and the deficiencies with Honda's 2023 recall.

89.    Honda knew or should have known about the Defect and its associated risks through the voluminous consumer complaints filed with NHTSA as early as July 2015. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). The publicly filed complaints concerning these vehicles describe the safety dangers and reliability concerns present in the Class Vehicles due to the Defect.

90.    The following example complaints filed by consumers with NHTSA demonstrate that the Defect is a widespread safety hazard that continues to plague the Class Vehicles to this day:[5]

91.    On July 31, 2015, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[6]

> TL* THE CONTACT OWNS A 2016 HONDA PILOT. WHILE DRIVING AT 55 MPH, THE ENGINE SHUT OFF AND THE ENTIRE INSTRUMENT PANEL ILLUMINATED. THE CONTACT NOTICED SMOKE EMITTING FROM THE FRONT DRIVER SIDE. AFTER LIFTING THE HOOD, FLAMES EMITTED FROM THE PASSENGER SIDE NEAR THE ENGINE. THE CONTACT WAS ABLE TO EXTINGUISH THE FIRE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS

---

[5]    All NHTSA complaints cited herein are verbatim copies of the complaints accessible on NHTSA's website. All typographical or grammatical errors are original.

[6]    NHTSA ID: 10745397.

NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 1,600.

92.    On September 8, 2015, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[7]

ON 9/3/15, I WAS PULLING INTO MY GARAGE WHEN ALL THE WARNING LIGHTS ON THE DASHBOARD WENT OFF - TRANSMISSION, CHECK ENGINE, LANE DETECTION LIGHT ETC. SINCE I WAS GOING OUT OF TOWN THE NEXT MORNING, I PUT IT IN REVERSE AND DROVE DIRECTLY TO THE DEALER. THE CAR WAS IN "LIMP MODE" AND I COULD ONLY DRIVE 35-40 MPH. I SHOWED THE TECH IN THE SERVICE DEPT. ALL THE WARNING LIGHTS GOING OFF, AND HE SAID HE HAD NEVER SEEN ANYTHING LIKE THIS BEFORE. HE WROTE UP A WORK ORDER WITH THE FOLLOWING INFO: INSPECT FOR CHECK ENGINE LIGHT ON, CHECK ENGINE LIGHT FLASHING AND EVERY WARNING LIGHT IN THE VEHICLE IS ON, WOULD NOT ACCELERATE OVER 35 MPH. THE FOLLOWING DAY I WAS CONTACTED BY THE SERVICE DEPT. AND WAS TOLD THEY COULD NOT FIND A PROBLEM; THERE WERE NO LIGHTS ON, THEY EVEN DROVE IT FOR 40 MILES. THE SERVICE DEPT. SAID THEY ARE ONLY ALLOWED TO HOLD THE CAR FOR FIVE DAYS. TODAY, 9/8/25 I PICKED UP THE CAR. THE DEALER'S INVOICE READS: CAUSE: LIGHT ON 123505 DIAGNOSTIC TROUBLE CODES/PROGRAMMED FUEL INJECTION (PGM-FI) RETRIEVE CODES WITH THE HDS, READ DATA, 74 WA3. INSPECTED FOR CHECK ENGINE LIGHT ON, FOUND DTC P0303 (CYLINDER # 3 MISFIRE) RECORDED FREEZE DATA AND CLEARED CODES, AT TIME OF INSPECTION VEHICLE WAS RUNNING PERFECTLY, TEST DROVE VEHICLE TWICE ON EXTENDED TEST DRIVES AND ENGINE RAN PERFECTLY, NO DTCS ARE RESET NO PROBLEM IS PRESENT AT THIS TIME. SINCE THE SERVICE DEPT. COULD NOT FIND THE PROBLEM AND FIX IT, THIS MEANS THE CAR HAS NOT BEEN REPAIRED AND I AM DRIVING A DEFECTIVE CAR. THE NEXT TIME THE WARNING LIGHTS GO ON, I COULD BE TRAVELLING ON A CROWDED FREEWAY AT A HIGH RATE OF SPEED (WITH MY FAMILY INSIDE), THE CAR GOES IN TO

---

[7]    NHTSA ID: 10762375.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

"LIMP MODE - 35 MPH AND AN ACCIDENT OCCURS. THIS IS A SAFETY ISSUE. HOW CAN ACURA MANUFACTURE A $50,000.00 CAR AND THEIR DEALERSHIP NOT BE ABLE TO FIND THE PROBLEM AND REPAIR IT?

93.    On January 29, 2016, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[8]

TL* THE CONTACT OWNS A 2016 HONDA PILOT. THE CONTACT STATED THAT AN ABNORMAL SOUND WAS HEARD, AFTER THE VEHICLE WAS STARTED AND THE VEHICLE TEMPERATURE WARM. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE TECHNICIAN CONFIRMED THAT THERE WAS AN ABNORMAL NOISE COMING FROM THE ENGINE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,400.

94.    On January 2, 2017, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[9]

ENGINE DOES NOT START AND ALL THE WARNING LIGHTS COME UP ON DASHBOARD. AFTER A FEW SECONDS, EACH OF THE SYSTEM COMES UP AS FAILED. DASHBOARD SHOWS AS ACC FAILED, LANE WARNING FAILED, EMISSION FAILED, ENGINE CHECK FAILED. THIS IS A SECOND FAILURE IN LAST 45 DAYS. FIRST FAILED ON NOV 20 AND CAR WAS IN SERVICE TILL DEC 21. AGAIN THE ENGINE FAILED ON JAN 02, NOT ALLOWING TO START AT ALL.

95.    On August 13, 2017, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[10]

WE BOUGHT A NEW MDX 2016 AND THE CAR WAS ACTING VERY STRANGE.THE POWERTRAIN WAS OFF, 30000 MILES ENGINE WAS OUT IN THE MIDDLE OF THE ROAD, NOISES EVERYWHERE. IT IS IN THE SHOP NOW AND IT HAS BEEN 2

---

[8]    NHTSA ID: 10823005.

[9]    NHTSA ID: 110939081.

[10]    NHTSA ID: 11014920.

BLOOD HURST & O' REARDON, LLP

1  MONTHS NOW SINCE REPAIR.IT IS STILL IN THE SHOP AND IT
2  HAS BEEN OVER 2 MONTHS.

3      96.    On May 26, 2018, the owner of a 2016 Acura MDX submitted the
4  following complaint to NHTSA:[11]

5      THE CAR OVERHEATED AND WAS LEAKING BLUE FLUID,
       STARTED SMOKING AND HAD A WEIRD CHIRPING NOISE
6      COMING FROM THE ENGINE. THE CAR WAS PARKED AND
7      WAS JUMPING ANOTHER CAR WITH A DEAD BATTERY.

8      97.    On March 25, 2019, the owner of a 2018 Honda Odyssey submitted the
9  following complaint to NHTSA:[12]

10     TL* THE CONTACT OWNS A 2018 HONDA ODYSSEY. THE
       CONTACT STATED THAT THE ENGINE MADE AN ABNORMAL
11     KNOCKING SOUND DURING ACCELERATION. THERE WERE
12     NO WARNING INDICATORS ILLUMINATED. THE VEHICLE
       WAS TAKEN TO SACO HONDA (754 PORTLAND RD, SACO, ME
13     04072, (207) 282-0900) WHERE IT WAS DIAGNOSED THAT A
14     NEW LOWER BEARING, SHORT BOX, PISTONS, CYLINDERS,
       AND CRANKSHAFT NEEDED TO BE INSTALLED. THE VEHICLE
15     WAS REPAIRED, BUT THE FAILURE RECURRED. THE
16     MANUFACTURER WAS MADE AWARE OF THE FAILURE AND
       WANTED THE CONTACT TO SIGN OFF ON A $2,500
17     PROMOTION TO KEEP THE VEHICLE. THE FAILURE MILEAGE
18     WAS 9,373.

19     98.    On October 15, 2019, the owner of a 2016 Honda Pilot submitted the
20  following complaint to NHTSA:[13]

21     TL* THE CONTACT OWNS A 2016 HONDA PILOT. WHILE
22     DRIVING 30 TO 50 MPH, THE VEHICLE HESITATED TO
       ACCELERATE AND JERKED. THE FAILURE WAS
23     EXPERIENCED NUMEROUS TIMES. THE VEHICLE WAS NOT
24     DIAGNOSED OR REPAIRED. THE DEALER AND

25

26  [11]    NHTSA ID: 11098086.
27  [12]    NHTSA ID: 11191446.
28  [13]    NHTSA ID: 11268673.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

MANUFACTURER WERE NOT CONTACTED. THE FAILURE MILEAGE WAS 50,000.

99.    On October 17, 2019, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[14]

TL* THE CONTACT OWNS A 2016 HONDA PILOT. WHILE DRIVING 25 MPH, THE VEHICLE FAILED TO ACCELERATE WHEN THE ACCELERATOR PEDAL WAS DEPRESSED. IN ADDITION, THE VEHICLE JERKED FORWARD FORCEFULLY AND MADE AN ABNORMAL NOISE. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE CONTACT STATED THAT THE FAILURE OCCURRED THREE TIMES WITHIN TWO MILES. THE VEHICLE WAS TAKEN TO HOWDY HONDA (LOCATED AT 5519 E BEN WHITE BLVD, AUSTIN, TX 78741, (512) 686-1544), BUT THE FAILURE COULD NOT BE DUPLICATED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 50,000.

100.    On November 1, 2019, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[15]

TL* THE CONTACT OWNS A 2016 HONDA PILOT. WHEN THE ACCELERATOR PEDAL WAS DEPRESSED, THE VEHICLE VIOLENTLY HESITATED TO DRIVE AND JERKED. THE VEHICLE WAS TAKEN TO COLONIAL HONDA OF DARTMOUTH (225 STATE RD, DARTMOUTH, MA 02747, (508) 996-6800) WHERE THE CONTACT WAS INFORMED THAT THE SOFTWARE NEEDED TO BE UPDATED SO THAT THE VEHICLE WOULD NOT OVERHEAT. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED AND STATED THAT THE VIN WAS NOT INCLUDED IN A RECALL. THE FAILURE MILEAGE WAS APPROXIMATELY 50,000.

101.    On November 11, 2019, the owner of a 2017 Acura MDX submitted the following complaint to NHTSA:[16]

---

[14]    NHTSA ID: 11269241.
[15]    NHTSA ID: 11277477.
[16]    NHTSA ID: 11279396.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

1  CAR CAUGHT ON FIRE WHILE WE WERE DRIVING WITH ALL
2  THE FAMILY INSIDE

3  102.  On February 10, 2020, the owner of a 2014 Acura RLX submitted the
4  following complaint to NHTSA:

5  TL* THE CONTACT OWNS A 2014 ACURA RLX. THE CONTACT
   STATED WHILE DRIVING AT VARIOUS SPEEDS THERE WAS
6  AN ABNORMAL KNOCKING SOUND COMING FROM THE
7  ENGINE COMPARTMENT. THE VEHICLE WAS TAKEN TO
   (AUTONATION ACURA STEVENS CREEK 4747 STEVENS
8  CREEK BLVD, SANTA CLARA, CA 95051) TO BE DIAGNOSED.
9  THE CONTACT WAS INFORMED THAT THE TIMING BELT
   SHIM NEEDED TO BE REPLACED. THE VEHICLE WAS NOT
10 REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE
11 FAILURE. THE CONTACT WAS INFORMED THAT THE
   WARRANTY WAS EXPIRED AND ALL REPAIRS WAS THE
12 RESPONSIBILITY OF THE VEHICLE OWNER. THE
13 APPROXIMATE FAILURE MILEAGE WAS 44,000.

14 103.  On April 2, 2020, the owner of a 2015 Acura TLX submitted the
15 following complaint to NHTSA:[17]

16 STARTING IN NOV 2019 MY ACURA TLX STARTED TO
17 SPONTANEOUSLY DECELERATE AND LOSE ENGINE POWER
   WHEN IN MOTION. ERROR CODE OF P0087 WAS PROVIDED BY
18 ACURA OF MILFORD, CT AND WAS HIGHLY SUGGESTIVE OF
19 REPLACING HIGH PRESSURE FUEL PUMP. THE ENGINE FUEL
   PUMP WAS REPLACED IN EARLY DEC 2019 HOWEVER THE
20 CAR CONTINUED WITH LOSS OF POWER, TERRIBLE GAS
21 MILEAGE, POOR ACCELERATION AND MULTIPLE WARNINGS
   ILLUMINATED. ACURA OF MILFORD WAS CONTACTED AND
22 THEY NOTED IT MAY BE THE OTHER FUEL PUMP THAT
23 NEEDED TO BE REPLACED. THE SECOND IN TANK FUEL PUMP
   WAS REPLACED MID DEC 2019 WITH NO IMPROVEMENT. THE
24 CAR WAS BROUGHT TO ACURA DEC 31, 2019 AND THEY SAID
25 THERE WAS NOTHING TO BE FOUND, THEY RESET THE P0087
26 CODE AND DID A HARD RESET. THE CAR STILL CONTINUED
   WITH THE SAME SYMPTOMS BUT NOW WITH A HUMMING
27

28 [17]  NHTSA ID: 11320004.

22

NOISE PRESENT. IN FEB 2020, THE FUEL RAIL AND SENSOR WAS REPLACED, YET STILL NO IMPROVEMENT. THE CAR WAS TAKEN BACK TO ACURA AND ONCE AGAIN THEY RESET THE ERROR CODE AND NOTED THEY ONLY FOUND CORROSION NEAR THE SENSOR AND THEY CLEANED IT OFF. CAR WAS DRIVING MUCH WORSE NOW AND IF IT LOSS POWER IT WOULD NOT START UP UNLESS CRANKED 15-25 TIMES IN A 10 MIN WINDOW. MARCH 2020 THE SPARK PLUGS WERE REPLACED AND THE CAR IS STILL NOT DRIVING RIGHT, ALL SYMPTOMS STILL PRESENT AND THE HUMMING NOISE IS GETTING LOUDER. THIS CAR HAS LOSS POWER WHILE IN MOTION RANDOMLY IN THE MIDDLE OF TRAFFIC, BOTH ON STREET AND MOST DANGEROUSLY ON THE HIGHWAY, EMBARRASSING BUT THANKFUL TO SOME GOOD SAMARITANS THAT HAVE EXITED THEIR VEHICLE TO PUSH ME SAFETY ON MULTIPLE OCCASIONS. ACURA CAN NOT DUPLICATE THE PROBLEMS YET JUST RESETS THE ERROR CODE AND SENDS ME ON MY WAY TO CALL IF IT HAPPENS AGAIN. IT HAS BEEN HAPPENING FREQUENTLY SINCE NOV 2019 AND NO ONE CAN TELL ME WHAT THE ISSUE IS, EVEN AFTER I HAVE SPENT THOUSANDS OF DOLLARS TRYING TO FIX THIS CAR BASED OFF THEIR GUESSES.

104.   On May 6, 2020, the owner of a 2017 Acura MDX submitted the following complaint to NHTSA:[18]

MECHANICAL FIRE *TR

105.   On July 19, 2020, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[19]

BOUGHT NEW 2020 BLACK EDITION HONDA PILOT ON MAY 2,2020 WITH 11 MILES ON IT. IT CAUGHT ON FIRE ON 6/15/20 AFTER DRIVING ONLY 3 MILES I NOTICED A BAD BURNT SMELL AS I WAS ENTERING A PARKING GARAGE, NOT THINKING IT WAS MY CAR BECAUSE IT WAS NEW AND THERE WERE NO DISPLAY LIGHTS INDICATING ANYTHING. I THEN NOTICED SMOKE COMING FROM MY HOOD ABOUT 30

---

[18]    NHTSA ID: 11323547.

[19]    NHTSA ID: 11340204.

SECONDS LATER. I IMMEDIATELY PARKED AND TURNED ENGINE OFF. GOT OUT OF VEHICLE TO SEE A FIRE BALL DROP FROM UNDER THE FRONT OF MY HOOD. THERE HAD BEEN NO PREVIOUS ALERTS ON THE CAR PANEL THAT ANYTHING WAS WRONG. WE HADN'T DRIVEN THIS CAR MUCH DUE TO COVID, PROBABLY ONLY HAD AROUND 400 MILES ON THE CAR. CAR FIRE IS BEING INVESTIGATED AS FAR AS I KNOW.

106.   On September 3, 2020, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[20]

I WAS DRIVING THE CAR AND SUDDENLY EVER SINGLE WARNING LIGHT WENT ON, I HEARD A LOUD NOISE AND THE VEHICLE STOPPED RUNNING AND WOULD NOT START BACK UP. I WAS TOLD I HAD A TIMING BELT FAILURE AND THAT MY ENGINE THREW PISTONS AND WAS DESTROYED. THIS VEHICLE HAD 78K AND HAD EVERY OIL CHANGE REQUIRED.

107.   On September 8, 2020, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[21]

MY TIMING BELT FAILED AT UNDER 80K MILE AND AT LESS THAN 4 YEARS OLD. I WAS DRIVING AND COULD HAVE BEEN SERIOUSLY INJURED AS MY CAR DIED IN THE MIDDLE OF THE ROAD. THE BELT THEN DESTROYED MY ENTIRE ENGINE.

108.   On November 16, 2020, the owner of a 2015 Acura RLX submitted the following complaint to NHTSA:[22]

TL* THE CONTACT OWNS A 2015 ACURA RLX. THE CONTACT STATED THAT WHILE DRIVING, THERE WAS A KNOCKING SOUND COMING FROM THE ENGINE COMPARTMENT PRIOR TO THE VEHICLE STALLING. THE CONTACT WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO DUVAL ACURA LOCATED AT 11225 ATLANTIC BLVD, JACKSONVILLE, FL 32225; WHO DIAGNOSED THAT THE

---

[20]    NHTSA ID: 11353021.

[21]    NHTSA ID: 11353631.

[22]    NHTSA ID: 11374818.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

TIMING TENSIONER FAILED, CAUSING THE ENGINE TO SEIZE. THE VEHICLE WAS NOT YET REPAIRED. THE MANUFACTURER WAS NOT YET NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 129,600.

109.   On January 17, 2021, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[23]

I'VE TAKEN MY VEHICLE IN 4 TIMES NOW FOR ELECTRICAL ISSUES AND THE SENSORS RANDOMLY GOING OFF. TODAY WHILE DRIVING, I GOT A NOTIFICATION OF AN ENGINE SYSTEM PROBLEM AS WELL AS AN EMISSIONS FAILURE AND AWD FAILURE. I PURCHASED MY VEHICLE BRAND NEW FROM THE DEALERSHIP AND THIS WILL NOW BE THE 5TH TIME GOING IN FOR ELECTRICAL ISSUES AND NOW WHATEVER THIS ENGINE FAILURE IS. THE DEALERSHIP IS CLOSED RIGHT NOW SO I DO NOT HAVE A FULL DIAGNOSIS BUT THE WARNING ON THE SCREEN TELLS ME TO LIMIT DRIVING AND KEEP THE CAR OFF DUE TO POTENTIAL FIRE. THIS SHOULD ABSOLUTELY BE INVESTIGATED.

110.   On February 17, 2021, the owner of a 2017 Acura MDX submitted the following complaint to NHTSA:[24]

LOSES POWER AND UNABLE TO ACCELERATE WHILE DRIVING AT HIGHER SPEEDS. HAS HAPPENED 4 TIMES IN 2 MONTHS

111.   On April 12, 2021, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[25]

CHECK ENGINE LIGHT CAME ON WHILE DRIVING, QUICKLY FOLLOWED BY A FLASHING OIL LIGHT. PULL OVER AND TURN VEHICLE OFF. CHECK OIL AND THERE WAS PLENTY. AT THIS POINT, THE CAR WILL NOT TURN OVER. HAD IT TOWED TO THE MECHANIC. THEY MANUALLY GOT THE CAR TO START BUT THE ENGINE IS KNOCKING AND THERE IS

---

[23]   NHTSA ID: 11388590.
[24]   NHTSA ID: 11396573.
[25]   NHTSA ID: 11407612.

ZERO OIL PRESSURE. ENGINE IS NOW NEEDING TO BE REPLACED. VEHICLE HAS 105K MILES ON IT. RECENTLY HAD THE WATER PUMP AND TIMING BELT REPLACED AT 103K MILES. REGULAR OIL CHANGES AND MAINTENANCE HAVE BEEN COMPLETED SINCE IT WAS PURCHASED.

112.  On September 14, 2021, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[26]

I have reported this problem before, all the warning lights on dashboard light up and car loses power. The first time I was driving on a highway at 70 mph and the car completely shut off, the second time, my wife was driving, with my daughter, and the car shut off while she was going 40 mph. She almost cause a chain reaction accident because she panicked when the car would not respond to her acceleration. In both instances, all the warning lights on the dashboard light up and the car goes into limp mode. The first incident, Honda updated the transmission software, after about 8-months later, Honda service found a DTC P0369 code and now want $2500 dollars for repairs. They want to replace the CMP sensor, Cam Shaft, Cam Shaft Thrust Cover, Valve Cover Gasket and Camshaft Seal! Why would a 2016 need a new Camshaft? There has to be a design issue with the engine, I would call this a premature failure of a critical part. Since this causes the engine to shut down, at any given time, the car cannot be driven until the camshaft is replaced. All I want is to have Honda make things right, a car with 76,000 miles should never have engine surgery like this, period! I render the Honda Pilot from 2016 to 2021 unsafe to drive, the engine has not changed, I wonder if they fixed the camshaft problem on later models? If so, they know there is a design issue.

113.  On September 3, 2021, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[27]

Incident occurred 9/28/21 4:20 - 4:30 pm PST while driving in the 3rd lane of southbound 880 Highway about 1 mile before the the exit of 16th Ave & Embarcadero in the city of Oakland. The speed that the vehicle was moving at the time of the incident was between 50 to 55 MPH. The vehicle has more than half a tank of gas and the battery has never been discharged. Also all the required vehicle inspections and services has

[26]  NHTSA ID: 11432954.
[27]  NHTSA ID: 11435014.

26

BLOOD HURST & O' REARDON, LLP

been performed by the same service center of San Leandro Honda since acquiring the vehicle on 2/10/21 from San Leandro Honda. There are 3 occupants in the vehicle; my wife, our 5 year old child and myself (driver). Our 2021 Honda Pilot EX-L with only 9,209 miles without any accident records started to show different kinds of warning signs lighting up on the dashboard, then followed by steering and engine failure. I immediately turn on the hazard lights and pointed the vehicle towards the right shoulder of the freeway. Thank goodness that at the time of the incident the traffic is heavier and moving slower. Also other motorists are accommodating enough to let us get to the shoulder without any accidents. If it was lighter traffic at the time it could have been devasted for us. Tow truck driver Manuel Escalante that works through FSP in partnership with CHP helped us get out of the shoulder of the 880 freeway onto a safer location in the city street to await further towing assistant from my roadside service with Honda. After getting towed by another tow truck driver to San Leandro Honda on 9/28/21, my vehicle still remain there. The service department haven't provided any detail report to why the engine seized from working while we were driving in the freeway.

114.   On January 14, 2022, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[28]

The engine to my vehicle has just over 108,000 miles and the rod bearings have shown signs of failure according to the dealership my car was taken to for diagnostic tests. The dealership has advised the engine had oil starvation. The car is regularly serviced at the dealership I originally purchased from. My safety and the safety of my family was at risk because the engine rods could have blown through the block and possibly explode into the cabin of the vehicle if we continued driving. The vehicle did not indicate any signs of oil starvation through the onboard diagnostic. The vehicle is still at the dealership pending further inspection at the original dealership that I purchased from. There was no indicator on the cluster to indicate otherwise for low oil.

115.   On April 9, 2022, the owner of a 2018 Honda Ridgeline submitted the following complaint to NHTSA:[29]

---

[28]    NHTSA ID: 11448728.

[29]    NHTSA ID: 11460257.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

My 2018 Honda Ridgeline began to make a loud knocking noise from the lower motor. I bought this vehicle last June with 47k miles on it. The vehicle has prompted me twice to change the oil. Both times I changes the oil myself within two days of the car warning stating I had 15% life of the oil. At the same time as the indicator light lit I began to notice the knocking sound. I change the oil the very next morning only to find the noise getting louder. The car is at the dealer now and the dealer is fighting me tooth and nail not to cover the work. They made me financially responsible to tare down the motor and find the root cause of the engine failure. Im literally paying them to find whatever excuse they can to not cover the repairs. They are sending out an adjustor to assess the engine parts and take oil samples. At that point a report will be sent to Honda stating the findings. They are asking for my oil change receipts that I unfortunately do not have. I have used OEM filters and reset the on-board computer with each oil change. OfCourse Honda claims they cannot retrieve this information from the on-board computers that I find hard to believe. The vehicle has approximately 64k miles on it and has had a recall completed for a malfunctioning fuel pump that leaks fuel into the oil. Did the repair get done in time to prevent this issue? The issue ever truly get resolved. The warrantee is a Honda Certified warrantee that covers the vehicle for 100k or 7 years. Furthermore, Honda has extended the warrantee on the fuel system to 150k acknowledging there are fuel issues with the vehicle. I even found a you tube video stating the exact problem. The video goes on to say that the oil should be changed more often to prevent viscosity breakdown. If that's the case, why wouldn't they just do an upgrade to the onboard systems to prompt you to change the oil more frequently? This whole time I am left without a vehicle. What if the engine locked up causing an accident.

116.  On June 8, 2022, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[30]

I will be filing a issue with our 21 Honda Ridgeline too as the same problem has occurred in both vehicles with the same engine and transmission. This has happened a total of 3 different times. When I drive the Pilot for a long time (over 4 hours)on the expressway and then pull off on a ramp and turn left the vehicle will go into safe mode. The engine light will start flashing and you can not drive over 30 mph. The engine

---

[30]    NHTSA ID: 11468185.

CLASS ACTION COMPLAINT

runs rough and idles hard. I have contacted Honda and the dealership I purchased it from. Honda has acknowledged this is a problem and has occurred multiples with many different vehicles. The dealership I work with has acknowledged the same thing as they have several vehicles that have been brought in with this problem. I have waited several months for Honda to come up with a solution, so far they have not. This is a safety concern because what would happen if this same situation came up when I'm pulling my trailer or on the expressway at higher speeds. This could cause an accident. This first started on my Pilot in December of 2021. It has happened several times since then. Every time there is no code the computer keeps, even though each time the engine light is flashing. What I have been told is the computer thinks the engine has backfired and goes into safe mode, but Honda doesn't know why it does this. If you turn the vehicle off and restart it, the problem goes away. When the dealership has run a diagnosis off the computer, there are no codes the computer throws. Even though the check engine light is flashing when this occurs.

117.   On June 8, 2022, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[31]

The contact owns a 2016 Honda Pilot. The contact stated while driving 50-55 MPH, the vehicle started jerking. There were no warning lights illuminated. The contact depressed the brake pedal and continued driving at slower speeds. The contact stated that the failure reoccurred while driving. The contact also stated that the vehicle lost motive power while reversing. The contact was able to restart the vehicle after several attempts. The vehicle was taken to the dealer where it was diagnosed that there was an oil leak. The oil pan, rear main seal, the engine mount, the crankshaft speed sensor, the spark plugs and the transmission mount were replaced. The contact stated that other unknown repairs were completed. However, the failure persisted. Additionally, the contact stated that the hood of the vehicle would fail to remain open as needed and would close independently. The contact stated that the failure occurred intermittently. The contact also stated that she smelled a strong gasoline odor inside the vehicle. The manufacturer was notified of the failure and a case was opened. The vehicle was not repaired. The failure mileage was approximately 160,000.

---

[31]    NHTSA ID: 11468163.

BLOOD HURST & O' REARDON, LLP

1    118.   On June 11, 2022, the owner of a 2016 Honda Pilot submitted the

2   following complaint to NHTSA:[32]

> On 11/29/21, 1 block from home, the engine started making a very loud
> knocking noise. I was able to turn around and drive back home but no
> faster than 20 MPH. After having the car towed to Schlossmann Honda,
> the diagnosis was: Full engine seizure, cylinder 3 connecting rod broken,
> piston damaged bank 1 cylinder head, metal contamination in bank 2
> cylinder head, scoring on bank 2 camshaft and cam journals. Replaced
> short block assembly and both cylinder assemblies. This happened at
> 101,587 miles, which was 1,587 miles after extended warranty expired.
> Repair was not covered but after pushing with Honda Corp, they agreed
> to charge me an $8,000 deductible for the repair.

119.   On June 24, 2022, the owner of a 2016 Honda Pilot submitted the
following complaint to NHTSA:[33]

> Rattling Noise in Engine after I stepped on the gas pedal at a light. Honda
> said the Engine needs to be replaced. 80,000 Miles never missed an oil
> change. Prior to the engine issue the pilot would stall at stop lights due
> to the auto shutoff feature. Honda attempted to replace the stop/start
> button, it did not fix the problem. When I brought it the 2nd time they
> said my battery was likely causing the issue and it needed to be replaced.
> I informed them I purchased a new battery two months prior. The issue
> was so bad that we had shut off the feature everytime we started the car.

120.   On June 29, 2022, the owner of a 2016 Honda Pilot submitted the
following complaint to NHTSA:[34]

> The contact owns a 2016 Honda Pilot. The contact stated that while
> driving at an undisclosed speed, the vehicle lost motive power with the
> check engine warning light illuminated. The vehicle was taken to the
> dealer where it was diagnosed with a misfire in cylinder #3. The dealer
> informed the contact that the engine needed to be replaced. The vehicle
> was not repaired and remained with the dealer. The manufacturer was

---

[32]    NHTSA ID: 11468761.
[33]    NHTSA ID: 11470919.
[34]    NHTSA ID: 11471502.

CLASS ACTION COMPLAINT

Blood Hurst & O' Reardon, LLP

not made aware of the failure. The failure mileage was approximately 130,000.

121.   On August 14, 2022, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[35]

5 times we have experienced P2135 code. 4 times this year, causing the dash warning lights to flash numerous warnings and the vehicle goes into immediate limp mode. Unable to accelerate normally and unable to drive faster than 30-35 mph on the freeway causing us to drive on the shoulder until we are able to safely exit the freeway . This has occurred while on a hill going up to an intersection not allowing me to accelerate to get through intersection safely. Unable to recreate the situation at the dealership, they see the code but unable the diagnose the root cause. We had the throttle body replaced at our expense per dealership recommendation. It reoccured again within 200 hundred miles. Dealership has had it for 2 days and they are unable to reproduce or diagnose the problem.

122.   On November 25, 2022 the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[36]

The engine completely stopped working while driving on the interstate. The engine only has 130,000 miles on it and I am now facing a $15,000+ repair on a known issue with the Pilots.

123.   On January 2, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[37]

Engine failure in the middle of the intersection while my 16 year old drove home from work. Car has always seemed like it had a transmission issue and seemed like something was not right but Honda did not seem concerned. Now engine failure.

---

[35]   NHTSA ID: 11479189.
[36]   NHTSA ID: 11494848.
[37]   NHTSA ID: 11499736.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

124.   On February 6, 2023, the owner of a 2022 Honda Pilot submitted the following complaint to NHTSA:[38]

> The contact owns a 2022 Honda Pilot. The contact stated while driving at approximately 35 MPH, the accelerator pedal was depressed; however, the vehicle hesitated. The contact stated that the emissions warning light was illuminated. The contact had taken the vehicle to a local dealer, where it was diagnosed and determined that the entire fuel system needed to be replaced. The vehicle was repaired. The contact stated that the failure recurred, and the emissions warning light illuminated again. The manufacturer had been informed of the failure. The failure mileage was 5,020.

125.   On August 29, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[39]

> My 2016 Honda Pilot was recently repaired as the Cam-Shaft had move within the care engine. My car has 109,000 miles on the vehicle, and should not have this issue given the cars age and the way that the car is driven. I am a suburban mom, who drives the car to work and with both of my children within my car. This put my entire family as risk driving within the care and could have hurt other drivers if the malfunction happened in the middle of the free-way or otherwise. The vehicle was inspected by the Honda Dealership for the issue. The vehicle has all of the dash lights flashing and the car was driving erratically, so much so that mid driving the car, it we were in a near miss accident due to the mechanical malfunction. The 2nd issue that has presented itself, it the start and stop button within the vehicle. It is a known defect to the vehicle.

126.   On September 25, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[40]

> While driving at freeway speeds of 80 mph, and while passing a vehicle, Engine wants to temporarily slow (like it's dropped a cylinder or two), and the car will NOT speed up. Then engine warning light starts to blink, Emissions Problem light starts to blink, then car downshifts several gears

---

[38]   NHTSA ID: 11505844.

[39]   NHTSA ID: 11541354.
[40]   NHTSA ID: 11546326.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

and slows dramatically - or will rev at 4500-5000 rpm. ON THE INTERSTATE! DRAMATICALLY UNSAFE. I've reported this to my dealer, Penske Honda in Carmel, IN - and they can't resolve any issue or see a stupid "error code". This has happened three times in past 3 years. IT"S TERBBYLY UNSAFE. Car goes from 80 to 60 and engine and transmission go on the blank.

127.   On October 10, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[41]

1. The camshaft on the engine, took to a mechanic and Honda dealership, they are both saying its the camshaft. 2. Cannot drive the vehicle because every time I get up to about 20 - 30 mph the shuts off without warning while driving, not even coasting to a stop enough to pull over to a shoulder of a highway, leaving me and my 3 kids stranded in the middle of busy roads/highways. 3. yes, Honda issued a "technical service bulletin" but refuses to fix the issue without causing unnecessary hardship to owners who are affected. 4. The manufacture Honda Co., is aware the Camshaft was "not machined according to spec" based on their own bulletin. 5. No warnings as far as I can tell, it just started happening more and more frequently until I can hardly drive it anywhere without it breaking down. Once it breaks down a bunch of unrelated warning lights come on such as, "Emission system problem, power steering problem, Vehicle stability /assist problem, Hill Start problem, Trailer Stability Assist problem, Road departure mitigation system problem, Keyless start problem, along with the check engine light.

128.   On November 1, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[42]

The short engine block failed while driving the car. Engine experienced problems prior to event such as engine shudder, engine shutoff while driving, and ultimately an engine failure while driving. Honda dealer stated that a failure in the short block is due to a manufacturer defect, but did not identify what the defect is. Having a car shut off while driving is extremely dangerous. Having a car engine fail while driving is also extremely dangerous. Car has been well maintained to all Honda

---

[41]   NHTSA ID: 11549177.
[42]   NHTSA ID: 11553092.

standards. The 2016 Honda Pilot should be investigated for engine shudder, engine shutoff and premature engine failures.

129.   On November 17, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[43]

The vehicle was making a noise when being driven and we took it to Fletcher Honda for diagnosis. They told us there was a safety bulletin out for rod bearing noise but no other information available. Now there is a recall and they say our VIN is not included in the recall but we have rod bearing noise and cannot drive the vehicle for fear the engine will blow out.

130.   On November 17, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[44]

The contact owns a 2016 Honda Pilot. The contact stated while driving approximately 10 MPH, she heard an abnormal clanking sound coming from the engine compartment. The vehicle stalled and the contact coasted to a stop. The contact stated there was warning light illuminated. The contact had the vehicle towed to a local dealer, where it was diagnosed and determined that the connecting rod to the crankshaft had failed, and the short block needed to be replaced. The vehicle was repaired. The manufacturer was informed of the failure. The contact researched online and related the failure to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling). The failure mileage was approximately 99,000.

131.   On November 17, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[45]

I have a very loud knocking noise in the engine of 2016 Honda Pilot. The dealership told me it was a bad rod bearing. The same day the dealership told me there was going to be a recall on my vehicle for this exact problem. They are now telling me my VIN number is not covered in the

---

[43]    NHTSA ID: 11555696.

[44]    NHTSA ID: 11555685.

[45]    NHTSA ID: 11555671.

CLASS ACTION COMPLAINT

recall for this exact problem. I find it hard to believe this problem occurred on my vehicle and is not related to recall. Thanks

132.    On November 19, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[46]

On 04/01/2023, when driving with my family in our 2016 Honda Pilot from a trip coming back from Washington D.C. enroute to our home in Michigan, I started to hear a vibration in the engine. You would hear it when depressing the gas pedal, and it would fade off if you let off of the accelerator. The vibration continually became worse. I checked the oil, and it was full. We continued driving and then the vibration became significantly worse. Then all of a sudden several dashboard lights came on and the engine exploded with parts of the engine blowing apart underneath the car. Thankfully we were in the far right lane when the engine exploded, as we were barely able to get off the side of the highway. Our 2016 Honda Pilot had 119,336 miles on it. We have maintained our vehicle on or before any maintenance due dates. What is bizarre is that all of the oil changes throughout the life of the vehicle have been with Mobil 1 synthetic oil, and always performed early. I recently noticed an upcoming Honda recall pertaining to some of their engines, and the issue appears to be identical to what we experienced.

133.    On November 21, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[47]

While driving on the highway, all of a sudden all the check engine light flashed on, and then a popping sound came from the engine and all the lights on the dash came on. The vehicle would no longer accelerate. I was able to pull off to the side of the road. I was able to get the vehicle started and carefully drove it home. We took it into a car place, and when they were test driving it to see what the issue was the engine seized.

134.    On November 21, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[48]

---

[46]    NHTSA ID: 11555910.

[47]    NHTSA ID: 11556174.

[48]    NHTSA ID: 11556292.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

Driving car on city street, without any warning the engine stopped working in middle of busy intersection. Engine would not turn over when tried to restart. No warning lights or messages prior to the engine stopping. Had vehicle towed to mechanic, they noted the engine is completely seized and had to replace engine.

135.   On November 21, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[49]

On 9.14.23, rod to crankshaft broke leading to catastrophic engine failure and damage. I had to coast off of the exit ramp I was on to the side of the road; then have vehicle towed to Martin Honda Services. ~$13k in repairs. This was prior to their knowledge that on Nov 13, 2023, Recall Report 23V-751 was issued. For the reason my engine blew up. However, my VIN is NOT covered in this recall. My hope is they expand the netting of VIN population to include ALL impacted 2016 Honda Pilots! $12,694.00 REMOVED OIL PAN FOUND BROKEN CYLINDER #3 PISTON ROD,DAMAGE ENGINE BLOCK AND CYLINDER HEADS. P&A ON SHORT BLOCK AND BOTH CYLINDER HEADS AND ALL NEEDED GASKETS $529.50 PERFORM V-6 VALVE ADJUSTMENT WHICH INCLUDES REPLACING BOTH VALVE COVER GASKETS.

136.   On November 21, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[50]

vehicle has been to standard maintenance at dealer. Rod problem at 100,000 miles resulting engine replacement. Transmission is not suitable and slips after 100,000 miles.

137.   On November 21, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[51]

The contact owns a 2016 Honda Pilot. The contact stated that while driving at undisclosed speeds, the vehicle sputtered and shook uncontrollably, almost caused a crash. The contact stated that the Emission statement warning light was illuminated. The vehicle was not

---

[49]   NHTSA ID: 11556289.

[50]   NHTSA ID: 11556267.

[51]   NHTSA ID: 11556242.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

diagnosed by an independent mechanic or a dealer. The vehicle had not been repaired. The manufacturer was not made aware of the failure. The failure mileage was unknown.

138.   On November 22, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[52]

The contact owns a 2016 Honda Pilot. The contact stated while driving 65 MPH and attempting to accelerate, she heard an abnormal clicking sound coming from the engine compartment. The check engine warning light was illuminated. The vehicle was taken to the dealer, who determined that the rod and crank in cylinder #3 were damaged, and the engine needed to be replaced. The vehicle was not repaired. After investigating the failure, the contact related the failure to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling), but the VIN was not included. The manufacturer was not notified of the failure. The failure mileage was unknown.

139.   On November 27, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[53]

Our 2016 Honda Pilot abruptly lost power while driving on a busy highway. All of the warning lights were flashing and a knocking sound was coming from the engine. There was also a constant jerking motion, the steering was shaking violently and the speed was fluctuating but would not go over 55 mph. The car is undrivable and is currently at the dealer service department. They reported that the VIN is not part of the current recall although the description of the recall is similar to what we have experienced with our vehicle.

140.   On November 30, 2023, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[54]

My engine light enabled & my car slowed < 30 mph while driving on a frwy on 2/4/23. I exited & turned the engine off. It was late at night in a rural area, so I waited a bit & turned the car back on. Engine light was no longer on, so I continued to my destination (GA). On 2/5/23, while driving on the frwy, my engine light enabled & my car quickly slowed

---

[52]   NHTSA ID: 11556478.

[53]   NHTSA ID: 11557129.
[54]   NHTSA ID: 11557689.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

to < 20 mph. The light stayed on & my car had little power (limped along). After a few hours, there was no change & my car was not drivable. I got a hotel for the night & took my car to the nearest Honda dealer on 2/6/23. The service dept told me my car needed a new engine because the bearing or rod had gone bad (terminology may be slightly off). My car had UNDER 100K miles & I was told it needed a new engine. The Honda serviceman told me he had 3 other vehicles in house with the same issue & he wouldn't be able to get to my car for a while. I called the nearest Acura dealer & spoke with a serviceman there, he told me to ask the Honda serviceman to clear engine code & slowly drive the car to the Acura dealership. The Honda serviceman warned me that my car may not make it to the Acura dealership but might if slowly. He cleared the code & I slowly drove to the Acura dealership. I reached the Acura dealership shortly before closing time on 2/6/23, I dropped my car off with the service dept & got a hotel room. I was contacted the following day, 2/7/23, by the Acura serviceman & he confirmed a new engine was required. There's now a recall on the same issue my car experienced for same make, model & year, however Acura states my VIN was not affected. It is highly unlikely that my same make, model & year vehicle that experienced the exact issue for the recall is simply coincidence.

141.   On December 1, 2023, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[55]

Ticking Sound in Engine Diagnosed by Dealer as same issue reported in recall for Year Make and Model of Vehicle. Diagnosed with need for engine replacement ($8,700). All service requirements by manufacturer done by dealer. Dealer says it is unsafe to drive. Vin not covered under recall NHTSA # 23V-751

142.   On December 5, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[56]

The engine failed on 12/1/2023. Currently it is still available for inspection upon request. My son was driving the car at 70mph on the freeway and the RPMs shot way up, the engine made loud noises, the engine and oil lights came on and the car abruptly slowed and stopped.

---

[55]   NHTSA ID: 11557878.

[56]   NHTSA ID: 11558582.

BLOOD HURST & O' REARDON, LLP

The vehicle had to be towed to a car repair shop where they confirmed that an engine rod failed. The engine knocks when you apply the gas pedal and will not drive. This matches a currently recall that doesn't include my vehicle and Honda refuses to apply the recall to my vehicle even though it is the same year make and model as recalled vehicles.

143.   On December 9, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[57]

Check engine light is on and flashing. Vehicle is also making a knocking noise coming from under the hood. Tech inspected vehicle and verified the customer concern at this time. Tech has found that the lower engine block is making a knocking noise at this time. Tech has pinpointed the failure to an internal component of the lower engine block. This issue seems to be related to the connector rod recall issued in November, including 2016 Honda Pilots. However, my vehicle's VIN is not included in the recall. I contacted American Honda for a goodwill claim. However, they refused my claim and any assistance with repairing my vehicle.

144.   On December 11, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[58]

When driving down the interstate with a car full of people. We noticed a clicking sound coming from the engine. The sound proceeded to get worse and louder. We pulled over and stopped driving. Had the car towed home and had our mechanic look at it who diagnosed it as a Rod knock. We have now towed it to the dealer and waiting for a "official" diagnosis from "master Mechanic." Honda doesn't seem to promising in resolving the issue or willing to replace the engine. This car will be worthless if they are unable to live up to their quality control, take some ownership for their mistakes, and do the right thing to fix the car they messed up from the beginning.

145.   On December 12, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[59]

---

[57]   NHTSA ID: 11559297.
[58]   NHTSA ID: 11559610.
[59]   NHTSA ID: 11559772.

Car broke down while driving due to engine failure. Honda dealership reported metal debris in oil pan and bearing material from connecting rod bearing coming apart causing noise. Engine short block was required to be replaced. Honda dealership also noted that this is a manufacturing defect. This is an extremely dangerous manufacturing defect to cause an engine failure on the highway. Honda needs to take action promptly to identify all vehicles affected by this manufacturing defect and they also need to reimburse me for the repairs caused by their manufacturing defect. There were no warning indicators prior to the engine failure. While driving the check engine light came on immediately following a knocking noise and car was no longer able to be driven and had to be towed. Car had only one owner (me) and was properly maintained. The Honda dealership has all maintenance records for this vehicle. Honda refused a goodwill warranty even though the failure was due to a manufacturing defect of the connecting rod bearing. Honda had already been investigating this failure as noted in the Part 573 Safety Recall Report 23V-751, OMB Control Number 2127-0004 document but failed to recognize this since it wasn't publicly reported until Nov 9. Honda"s failure to recognize their responsibility for this failure despite investigating this exact manufacturing defect is not only irresponsible but also unethical. Honda is liable for all manufacturing defects. Honda needs to investigate my vehicle immediately and reimburse me for these charges due to this manufacturing defect.

146.   On December 13, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[60]

ENGINE MADE NOISE. ENGINE STOPPED SUDDENLY ON HIGHWAY. VEHICLE WITH 3 OCCUPANTS HAD TO BE TOWED FROM HIGHWAY AND TRANSPORTED TO HONDA DEALERSHIP FOR REPAIRS. VEHICLE HAS BEEN INSPECTED AT GUNN HONDA, 14610 I-10 W SAN ANTONIO, TX ADVISED BY THE DEALER THE VEHICLE WILL REQUIRE EXTENSIVE (REPLACE ENGINE) REPAIRS. THERE IS A RECALL FOR 2016 HONDA PILOT (23V751000) FOR CONNECTING ROD BEARING HOWEVER THIS VEHICLE DOES NOT FALL WITHIN THE MFG WINDOW.

---

[60]   NHTSA ID: 11559963.

CLASS ACTION COMPLAINT

147.   On December 13, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[61]

The dash began displaying 4 error codes EPS problem, VSA problem, Hill Assist problem, and TSA Problem. It began to jerk and lose power similar to running out of gas necessitating hazard lights and pulling off the road x3 after dark. 3 different shops ran a diagnosis code of P0369. The recommendation from Honda after having the car three days was to replace #2 cylinder head assembly at an estimate of $6400! There would also be no guarantee that this repair would fix the problem. The vehicle only has 83,000ish miles. After speaking with American Honda, they were aware of this problem but said my vin number wasn't included in the pool of "faulty manufactured parts" but did say that didn't mean that I didn't get faulty parts though. The vehicle is no longer under warranty. I just paid this vehicle off in May. This certainly doesn't support Honda's reputation as being a manufacturer of reliable vehicles. I have never owned a used vehicle that required this depth and cost of repair. I am waiting on their Goodwill Review to see if they decide to help me with this. The two representatives including a case manager I spoke with didn't seem as though it was likely going to happen.

148.   On December 19, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[62]

I have a 2016 Honda Pilot Touring and just recently had to have the engine replaced at 135k miles due to crankshaft failing, causing damage to the engine. This happened before the recall for the crankshaft came out. Honda is trying to say my VIN is not covered. NHTSA recall report states production dates of May 2016-June 2016. Sticker on my Pilot says manufactured 05/16. Can't wait to see how Honda will try to wiggle their way out of reimbursing me for engine replacement.

149.   On December 19, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[63]

I was sitting at a light. The car started idling funny. Then stalled. Never started again. Dealer is telling me something is loose in the engine. I saw

---

[61]   NHTSA ID: 11559949.
[62]   NHTSA ID: 11560935.
[63]   NHTSA ID: 11560892.

BLOOD HURST & O' REARDON, LLP

a recall for honda pilots, but the vin numbers were XX1 and GG0. My vin is [XXX] , what is the difference. *The engine failed. Yes available for inspection. *If engine fails while driving on highway. Car completely shut down. * No dealer did not open up engine because I can't afford to pay for them to look and see what happened would cost roughly around 1,000.00. *Dealer looked at it just told me that something is loose in engine. Suggest I put in new or rebuilt engine. * Yes the engine light came on about 30 seconds before car completely shut down. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

150.   On December 20, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[64]

The contact owns a 2016 Honda Pilot. The contact stated that while his wife was driving and stopped at a traffic light, the light turned green, and the contact's wife depressed the accelerator pedal however, the vehicle failed to respond as intended. The check engine warning light illuminated, and the engine seized. The vehicle became inoperable in traffic on a busy street. Additionally, the other drivers were honking horns. The contact's wife was able to restart the vehicle and drive the vehicle to her residence. The vehicle was taken to the dealer where it was diagnosed with a seized piston and a fractured rod. The contact was informed that the engine needed to be replaced. The vehicle was not repaired. The manufacturer was made aware of the failure and a case was filed. The failure mileage was approximately 109,000.

151.   On December 20, 2023, the owner of a 2018 Acura TLX submitted the following complaint to NHTSA:[65]

The contact owns a 2018 Acura TLX. The contact received notification of NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling). The contact stated that when the vehicle was started, the vehicle was idling roughly. Additionally, the accelerator pedal was depressed and there was an abnormal knocking sound coming from the engine. The contact stated that the knocking became faster and louder while depressing the accelerator pedal. The vehicle was taken to a dealer where it was diagnosed and determined that the rod bearing needed to be

---

[64]   NHTSA ID: 11561061.
[65]   NHTSA ID: 11561050.

replaced; however, the part to complete the recall repair was not available. VIN tool confirms parts not available. The vehicle was not repaired. The manufacturer was advised of the failure. The failure mileage was approximately 40,000.

152.   On December 21, 2023, the owner of a 2018 Honda Ridgeline submitted the following complaint to NHTSA:[66]

Our 2018 Honda Ridgeline broke a connecting rod, that quickly punched through the engine block. My entire family was left stranded on the side of I-79, at night, in the mountains of West Virginia, in subfreezing temperatures, with no power or heat. It took an hour for a tow truck to reach us (we were in the middle of nowhere) and another hour to get it towed to the nearest Honda dealership. The only warning we had was a slight rattle for about 10 minutes, followed by a POW, immediate and complete loss of engine power, and all the dashboard lights came on simultaneously. The dealership (Urse Honda in Bridgeport WV) confirmed the hole in the side of the engine block, and let me take pictures of the broken rod cap. Ironically, the month before the catastrophic failure, on 11/9/2023 Honda internally released Technical Service Bulletin (TSB) [XXX] that speaks to "internal damage at the connecting rod bearings, possibly leading to engine failure." However I only found out about this TSB AFTER my engine blew up. Furthermore even though this TSB describes exactly the failure I experienced, it ONLY covers 2017 and 2019 Ridgelines, mysteriously skipping over my 2018 Ridgeline. Because of this (for now) Honda is refusing to cover damages to my engine, and also to repair other customers' 2018 Ridgelines before they too catastrophically fail. Even more curious the front 2/3rds of the Ridgelines and Pilots are the same, replacing only the third row Pilot seat with a truck bed in the Ridgelines. Yet the 2018 Pilots ARE covered by this TSB. Honda cannot explain this discrepancy. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

153.   On December 24, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[67]

---

[66]   NHTSA ID: 11561380.
[67]   NHTSA ID: 11561674.

BLOOD HURST & O' REARDON, LLP

Components that failed: engine blew up on a Freeway; car experienced oil leaks; air conditioner stopped working; electrical problems- windows and sunroof suddenly open on their own. Facts: In Feb. 2019, I bought a certified preowned 2016 Honda Pilot with 40K miles. I drove it for less than a year before COVID-19 began and I started working from home. Shortly after I bought the car, it started leaking engine oil, which Honda later repaired. In summer 2021, the air conditioner system stopped working. On June 4, 2023, I was driving the vehicle on the 57 Freeway, Northbound, when my engine suddenly blew up and failed in the middle of the Freeway. The sudden engine failure put me and others at risk of serious injury. Since purchasing my car, I had my car regularly serviced by a Honda dealership. After inspecting my car, the Honda dealership said they did not know what caused the engine to blow up. There were no warnings, messages, or other symptoms before the engine failure.

154.    On December 29, 2023, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[68]

My vehicle stalled and had a horrible noise while stalling. Dealership took it back to their shop as we thought if was due to yhe work they just finished and after inspecting they determined a rod bearing had spun. The safety issue is we stalled out on the highway in the middle of traffic, almost got into several wrecks with my child in the vehicle. Only light that came on while stalling was the check engine light.

155.    On January 10, 2024, the owner of a 2016 Acura MDX submitted the following complaint to NHTSA:[69]

while driving on a local road (not highway), engine began to make a very loud sound. sounds like metal on metal inside engine. called local ACURA dealer and they said that the connecting rod recall/problem that was announced in November 2023 "does not apply to my VIN".

156.    On January 11, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[70]

---

[68]    NHTSA ID: 11562563.

[69]    NHTSA ID: 11564665.

[70]    NHTSA ID: 11564947.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

While driving on the highway, the vehicle suddenly stalled, and many notifications came up on the dash. Some of the warnings include: emissions system warning, power steering system problem, trailer stability assist problem, power steering problem, hill start assist problem, vehicle stability assist problem, all wheel drive system problem. While driving on highway, the vehicle stalled, lost the ability to steer and brake, and had to roll to the side of the road. There was total engine failure. Dealership diagnostics indicate a problem with crank shaft/ connecting rod, and the entire engine needs to be replaced. There is an existing recall for my year, make, and model of vehicle 2016 Honda Pilot for this exact problem, but it has not been applied to my VIN yet. The recall needs to be extended to cover my vehicle. My family's safety was compromised by complete engine failure on a highway during rush hour.

157.   On January 13, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[71]

Since 2021 the vehicle has stalled everywhere we go and has a gas/electrical burn fume. The vehicle had stalled in the middle of the highway and didn't allow us to shift it into any gears while flashing all dashboard lights. The vehicle was towed to Legend driven Honda where they couldn't find any issues and said they just reset the transmission code. For our peace of mind, we thought it would be best to have the full work up on the transmission since the dealership seemed incompetent with our vehicle's malfunction. The vehicle continued to stall and even had trouble starting up at times with the continued gas fumes. Well, it wasn't long before the issue returned and we were back to where we started, along with our A/C unit failing on us. We left the vehicle idle in the driveway for a bit as it was a safety concern for our families' wellbeing. We later received a recall notice on the auto-idle stop mechanism which we figured must have been the issue all along. We took it back to the dealership where they did their full inspection and came up with our transmission needing its regular full work-up which we had proclaimed that we already had done in the earlier months. After the alleged recall fix, the problem continued. We took the vehicle back and were told it was our battery and recommended our timing belt be replaced otherwise it would cause major issues down the road(it was concerning to us as these issues were never brought up the multiple times we had brought it in for the initial issues). Surely, we had it all fixed and

---

replaced for the safety of our families well being having had our vehicle stall numerous times on the road which has now caused our children to be frightened of driving anywhere. Well on return home from the dealership, the vehicle did not stall, 2 hours later went to turn it on, it did not want to start and made a loud knocking noise. Currently towed to a different dealership

158.   On January 17, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[72]

The connecting rod bearing has gone bad resulting in slippage and engine rod knocking. The bearing has gone bad because the crankshaft was manufactured/machined out of proper specifications per Honda America. The problem in question is already posted on the NHTSA website. "Engine Damage from Connecting Rod Bearing Wear" The noise occurred while driving to North Georgia with seven people in the 8 passenger car. Once we heard the knocking we immediately pulled over, 115 miles from home. Further driving could have caused the engine to seize, slip, or explode. The problem has been confirmed by both a certified master mechanic at the Honda dealership as well as an independent mechanic who worked for a dealer for a number of years. Yes the 2016 Honda Pilot has been inspected by the certified master mechanic at the dealer. There were no warning lights that came on until the time of the noise. Once the noise was apparent the oil lamp, check engine light, and other warning lights began to flash.

159.   On January 17, 2024, the owner of a 2017 Acura MDX submitted the following complaint to NHTSA:[73]

The contact owns a 2017 Acura MDX. The contact stated that while his wife was driving at an undisclosed speed, she heard an abnormal knocking sound coming from the engine compartment. No warning lights were illuminated. The vehicle was taken to the dealer, who diagnosed a failure with the connecting rod bearing, resulting in damage to the engine. The vehicle was not repaired. After investigating the failure, the contact related the failure to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling) but the VIN was not included.

---

[72]   NHTSA ID: 11566010.
[73]   NHTSA ID: 11566129.

CLASS ACTION COMPLAINT

The manufacturer was notified of the failure, and a case was opened. The failure mileage was 110,000.

160. On January 18, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[74]

The contact owns a 2016 Honda Pilot. The contact stated that while his wife was driving at approximately 45 MPH, the vehicle stalled. The contact stated that there was an abnormal sound coming from the engine compartment before the vehicle lost motive power. The contact's wife continued to drive; however, the vehicle stalled. The vehicle was towed to a dealer where it was diagnosed and determined that the engine needed to be replaced. The contact believed that the failure was related to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling). The vehicle was repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 101,000.

161. On January 19, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[75]

My engine broke and the 2016 Honda Pilot awd engine locked up and the dealership is saying it's the same issue as the 2016-2019 recall. Also I own a 2008 Honda element awd windshield cracked. The recall for every Honda Element year except 2008. 2003-2007, 2009-2011. That doesn't make since either. Phone [XXX] [XXX] [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

162. On January 19, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[76]

The contact owns a 2016 Honda Pilot. The contact stated while driving at various speeds, an abnormal knocking sound was coming from the vehicle. There was no warning light illuminated. The vehicle was taken to a dealer where it was discovered that the engine was damaged due to excessive wear of the connecting rod bearing. Upon investigation, the contact discovered NHTSA Campaign Number: 23V751000 (Engine

---

[74] NHTSA ID: 11566258.

[75] NHTSA ID: 11566532.

[76] NHTSA ID: 11566949.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

and Engine Cooling) which was linked to the failure. The vehicle was also taken to an independent mechanic and the failure was verified. The manufacturer was notified of the failure and provided a case number. The vehicle was not repaired. The failure mileage was approximately 74,000.

163.   On January 21, 2024, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[77]

Hello, Twice in the past two months, my car's engine has lost power while driving on the highway. First, while entering and merging onto the highway, and once while exiting the highway. Both times, the check engine light came on, pressing the gas pedal had no effect, and we could only coast to the side of the road. Both times we had to restart the vehicle. After the first incident, I went to the dealership. They "fixed" the vehicle, replacing gaskets that Honda knew might fail but didn't issue a recall (only fix if there is an issue). This obviously did not fix the issue. Thankfully we did not have an accident, but complete loss of power could have been disastrous. I now have to go back to the dealership.

164.   On January 22, 2024, the owner of a 2016 Acura MDX submitted he the following complaint to NHTSA:[78]

The car suffer complete engine failure while driving on the highway. I had the car towed to an acura dealer . The acura dealer has informed me that the engine rod failed There is a recall by acura for 250,000 vehicles incuding the same year and model for the same problem . The engine is availble for inspection . My vehicle is not under recall . i was informed by Acura customer relatiins that they will not help me . I was informed by a acura dealer that they will can replace the engine with a used engine for 9000$ . i said ok but then wondered if the engine they would replace it with was under recall. The looked into it and have informed me that the engine is in fact one of the recalled engines and then asked me if i wanted to proceed with the replacement with an engine that is dangerous ... This seems incredible to me and should be illegal and certainly dangerous..

---

[77]   NHTSA ID: 11566855.

[78]   NHTSA ID: 11567133.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

165.   On January 29, 2024, the owner of a 2016 Honda Pilot, submitted the following complaint to NHTSA:[79]

> Hi Sir/Madam, Wish you are going well. I own a 2016 Honda Pilot Touring AWD . Recently on [XXX] while i was driving in it with my family to New York airport the engine suddenly started making some noise and before we could pull over the car to the shoulder the engine got fire , fortunately we escaped by jumping out from the car as soon as we were on shoulder. The car was then towed to the service station and after inspection the service station informed that this is a case of engine failure due to crank shaft connecting rod failure. For repair the engine needs to be replaced and the estimated cost would be around $7000. I checked for 2016 Honda pilot recalls and saw this latest recall XG1 and GG0 which describes the same issue . However, my VIN No. does not show any recalls. Request your kind advice as i am not in a condition to afford the repair, the insurance does not cover this and i am stuck as i cannot to go anywhere without car. Is there any way i can get the car repaired free of cost by Honda ? Do i need to file a lawsuit for that? A Recall law suit is possible? Can I include claims for defective vehicle and negligence as I got the vehicle serviced from Honda Service station recently and they didn't checked/informed for this issue causing fatal safety concern for my entire family. Looking back for your kind advice. Wish you a wonderful day. Thanks & Regards, [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

166.   On January 29, 2024, the owner of a 2017 Acura MDX submitted the following complaint to NHTSA:[80]

> Internal damage at the connecting rod bearing causing engine failure. I have a video from the dealership explaining everything. It is too large to upload to this submission worksheet. There is an active recall on for this exact problem on other years of the MDX and TLX but my VIN is not included in the recall.

---

[79]   NHTSA ID: 11568479.
[80]   NHTSA ID: 11568458.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

167.   On January 29, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[81]

> I was driving and the engine was making noises and started losing power. I heard a loud noise and the engine died. There is a recall on these engines. and my car is the year make and model.

168.   On February 2, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[82]

> When going a consistent speed, the engine RPM flutters up and down which jerks the car back-and-forth while going around 40 mph. Independent mechanic said there's something wrong with the VTEC system and one of the cylinders is not getting enough air.

169.   On February 2, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[83]

> I was driving my vehicle on the highway at approximately 70 kph when the engine seized and all of the warning lights in the dash went out simultaneously. The car would barely accelerate but I was able to pull over and get it towed to a shop. The shop diagnosed total engine failure as a result of tension rod shavings showing in the oil filter. I researched recalls for my model & year and found November 13, 2023 NHTSA CAMPAIGN NUMBER: 23V751000. Although my specific VIN is not yet included, both the model/ year and symptoms of the issue match exactly with what happened to me. I urge you to include my VIN in this recall.

170.   On February 8, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[84]

> The contact owned a 2016 Honda Pilot. The contact stated while driving approximately 35-40 MPH and approaching the red traffic light, she depressed the brake pedal to come to a complete stop. The contact noticed smoke coming out of the cowl of the vehicle. The contact then

---

[81]   NHTSA ID: 11568910.

[82]   NHTSA ID: 11569553.

[83]   NHTSA ID: 11569916.

[84]   NHTSA ID: 11570838.

CLASS ACTION COMPLAINT

turned on the AC and smoke came through the A/C vents. The contact opened the windows. The contact stated that the smoke became thicker and brownish while pulling into the parking lot of a nearby shopping center. There was no warning light illuminated. The contact parked and turned off the vehicle. The contact then noticed that there was a hole in the middle of the hood, and there was a flame coming through the hole. The contact stated that the hood and the windshield became engulfed in fire within 3 minutes even though it was raining. The fire department extinguished the fire, and police officers arrived at the scene, but the contact did not know whether a fire department report and a police report were filed. The vehicle was towed to a tow lot, awaiting to be totaled. The local dealer and the manufacturer were not notified of the failure. The failure mileage was approximately 51,000.

171.   On February 9, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[85]

The contact owns a 2016 Honda Pilot. The contact stated while driving at 55 MPH, the engine made abnormal clicking sounds and was shaking while accelerating. The check engine warning light was illuminated. The vehicle was taken to an independent mechanic. The independent mechanic recommended that the contact wait to see if the vehicle was included in an upcoming recall. The vehicle was then taken to the dealer, and it was recommended that the rocket oil pressure switch and an oil change be performed. The vehicle was previously repaired however, the failure persisted. The vehicle was not repaired due to the independent mechanic recommending that the contact wait for a recall. The contact referenced NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling) as a possible solution however, the VIN was not included in the recall. The manufacturer was notified of the failure and stated that assist might be provided under a Good Will Program. The failure mileage was approximately 85,000.

172.   On February 12, 2024, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[86]

The engine shut down while driving down the highway with no warning. We thought it was just a dead battery but found out from the dealer that

[85]   NHTSA ID: 11570992.
[86]   NHTSA ID: 11571501.

51

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

the connecting rod in the engine shattered without explanation. The check engine light NEVER came on and there were no other sensory warnings that there was an engine issue. The car has only 81,000 miles and has a solid, documented service record with the dealer so this engine failure was a total surprise. The engine shut down while driving down the highway with no warning. We thought it was just a dead battery but found out from the dealer that the connecting rod in the engine shattered without explanation. The check engine light NEVER came on and there were no other sensory warnings that there was an engine issue. The car has only 81,000 miles and has a solid, documented service record with the dealer so this engine failure was a total surprise. It put the driver, my [XXX] daughter, in danger as the car shut down on a highway at night without warning. She safely pulled the car over to the side of the highway within a construction zone and waited alone in the dark for me to pick her up while cars were passing at highway speeds. This breakdown could have resulted in an engine fire again without warning. The Honda dealer inspected the engine and took photos of the broken connecting rod. I have sent a customer service request to American Honda with the pictures, maintenance records and diagnosis of the issue given by the dealer. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

173. On March 23, 2024, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[87]

Connecting rod bearing failure resulting in the short block having to be replaced. Currently at Honda Dealership having short block replaced. 56000 km currently on vehicle and all oil changes made at correct intervals.

174. On May 3, 2024, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[88]

My fiancé and children were driving our 2020 Honda pilot on May 2, 2024 when she started hearing a clunking noise and the vehicle, lost power as she was driving on interstate 70 she was able to get the vehicle to the side of the road safely, but the Indian was making loud clocking

---

[87] NHTSA ID: 11579030.
[88] NHTSA ID: 11586698.

CLASS ACTION COMPLAINT

1  grinding sound with very little power to move This was very unsafe in a
2  scary situation for her and the kids The car is not safe to drive like this

3  175.  On May 28, 2024, the owner of a 2022 Honda Pilot submitted the
4  following complaint to NHTSA:[89]

5  Car abrupt stopped working while driving. All the lights on dashboard
6  popped up with emissions warning on dashboard. The car was unable to
   start. Luckily for me I was in the neighborhood. This would have been
7  very dangerous if I was on a highway or busy road. I had my children in
8  the car. My vehicle was towed to the dealer who inspected it and said
   that my fuel pump needs to be replaced. A week prior the blind spot,
9  emissions and transmissions light popped up and the car was semi
   drivable for me to make it to the dealer. I was told that it was my oil
10 pressure switch that needed to be replaced just for my car to die 5 days
11 later

12 176.  On September 9, 2024, the owner of a 2020 Honda Pilot submitted the
13 following complaint to NHTSA:[90]

14 On August 12th, 2024, we were driving North on New Jersey Turnpike
15 at 65mph surrounded by traffic when the vehicle suddenly and
   unexpectedly stalled (no dashboard warning lights or system messages
16 prior, nor any signs while driving prior). The surrounding cars were
17 unaware of this mechanical failure and thus it created an extremely
   dangerous situation for all on the highway. Fortunately, I was able to
18 navigate safely to the side of the highway without incident. Having
19 towed it to the nearest Honda dealer, they diagnosed the root cause to be
   seized timing belt idler pulleys, causing the engine to lose timing and
20 stall. This failure also resulted in damage to the cylinder heads, valves
21 and associated components. While the dealer has repaired all of this
   damage under warranty, they have not adequately justified how or why
22 these components failed extremely prematurely (4 year old vehicle with
23 35k miles). Additionally, Honda has not provided reimbursement for the
   resulting expenses incurred - hotel, rental car, towing, etc.

24
25
26

---

27 [89]  NHTSA ID: 11591120.
28 [90]  NHTSA ID: 11613495.

BLOOD HURST & O' REARDON, LLP

177.   On November 12, 2024, the owner of a 2018 Acura RLX submitted the following complaint to NHTSA:[91]

> My vehicle has the same 3.5 liter naturally aspirated V6 that comes in the Acrua MDX which is currently on recall for connecting rod bearings on vehicles with 3.5-liter V6 engines can fail, leading to complete engine failure. my car has the excact same engin with the exact same problem. i have the full diagnosis and estimate from Acura ENGINE REPLACEMENT

178.   On November 13, 2024, the owner of a 2020 Honda Odyssey submitted the following complaint to NHTSA:[92]

> Several engine failures, starting one month after purchase in September 2020. multiple system failures (all on video) leading to very poor acceleration and operation. No compression in engine and only able to go 20 mph. White-Allen Honda made four attempts to solve the matter over the course of two years. The dealer has had the car a total of 120 days. Then end of December 2024 then engine began making a knocking sound and I was told it needed at new engine, to the tune of $10,000.00. Then I see a recall for a similar issue but only up to 2019 Odysseys. Please help find resolution for this.

179.   On November 18, 2024, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[93]

> The vehicle had an engine bearing rod failure but was not included in the 23V-751 recall. The repair is covered under warranty but because there is no recall, I have to pay for car rental myself and the repair could take weeks to months.

180.   On November 27, 2024, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[94]

> Piston rod blew out the side of the motor, was checked out at the Honda Dealership. My young daughter and friend were driving when it

---

[91]   NHTSA ID: 11624761.

[92]   NHTSA ID: 11634591.

[93]   NHTSA ID: 11625998.

[94]   NHTSA ID: 11627728.

CLASS ACTION COMPLAINT

happened, which could have been bad. Dealer confirmed motor blown. I'm not sure if this was inspected by the manufacturer, but the dealer looked at it. There was no warning whatsoever prior to motor blowing.

181.   On December 12, 2024, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[95]

Engine developed a knocking, then started to sputter and ultimately stalled. No codes showed. Sent to dealership, they said I need a new engine, but could not tell me why. Again No codes drove car for 1 day, engine completely failed.

182.   On December 20, 2024, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[96]

So on Oct 25, 2024 I took my car to get an oil change at the moss bros Honda dealership. I always get all maintenance done there. Then a week later on Nov 3, 2024 my suv pilot broke down on the freeway it just started jerking and the screen kept glitching then right after the engine light went on. I was not aware of any signs for it to happen but Luckily there was a cop and a tow truck close by because who knows what would have happened. After that I took to the dealership on Tuesday and they inspected it then they come and tell me that my engine is done. So they were trying to charge me $8792 for a used engine. I just think is so weird that how everything happened knowing that is a semi new car and I been taking care of the maintenance so for this to happen I find it sketchy.

183.   On December 7, 2024, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[97]

Honda Pilot AWD EX-L 2020 Engine Failure Incident Report October 5, 2024 Check Engine light went on 294 IL Tollway while traveling in left lane. Began to feel a slowing of the vehicle and just a wrong feeling, proceeded to move towards right lane in busy traffic and ~0.5 to 0.75 miles later check engine light started flashing as we proceeded to exit. Planned to make it to rest area or tollbooth but felt it was too far away; check engine light flashing, pulled over to shoulder short of the tollbooth.

[95]   NHTSA ID: 11630325.

[96]   NHTSA ID: 11631834.

[97]   NHTSA ID: 11632721.

55

Shut down all extraneous items (radio, A/C) and pushed the ignition button to turn off vehicle. Could hear some clanking sounds (which we have later researched and found audio/video of mechanics speaking about oil pump failure and loud clanking sounds, which was exactly what we heard).Vehicle didn't seem to respond (not shutting off), pushed button again and now several red light warnings popped up in succession, these are the ones I recall seeing: (Oil pressure low and Low oil), I believe there were others, but they were cycling fast and didn't put them to memory, but clearly the codes had been unleashed. Pushed button again and engine shut down. Opened hood and checked oil and did see oil on the dipstick (though level was not clear, seemed to have oil on upper and lower part of reading area, but not in the middle); Called dealer and agreed sounded like an oil pump failure, which in theory could mean there is still plenty of oil in the engine and moving to a safe location. Attempted to start engine again and it struggled and didn't really start, had a clanking sound again, so hit the button to shut it off for good; and called for tow. Diagnosed with engine failure, quoted replacement $16k, negotiated after documentation and provided good will from Honda with deductible out of pocket $4917.75. Upon posting of investigation now approaching Honda Corporate for reimbursement request.

184.   On January 8, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[98]

We were driving down [XXX] in Columbus, Ohio and the cars started to lose power and felt a explosion or slip, right after all the dash board warning lights came on and oil light stating no oil, as I pulled over you could see tire width of oil 1/2 mile down the interstate and showing where I pulled and engine has seized up, I turned engine off , all lights stayed on and dash board, and engine was smoking bad, I got out until help arrived. husband opened hood and oil was everywhere, and car would not start. It was towed to Honda Dublin, Ohio and they inspected. Stated the engine had a hole in it and rod bearing had overheated and shot out of the block destroying the engine. WHY ARE THERE NO RECALLS. THIS CAR IS A 2020 UNDER $100K NOTHING WAS WITH IT AND STILL OWE $18K YET CAN'T BE DRIVEN. HAS THERE BEEN ANY SOLUTIONS? [XXX] if anyone else has experienced this please email me on what the end result was please.

---

[98]   NHTSA ID: 11634925.

BLOOD HURST & O' REARDON, LLP

[XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

185.   On January 10, 2025, the owner of a 2023 Honda Odyssey submitted the following complaint to NHTSA:[99]

An engine rod blew a hole in the engine block while traveling on the highway. This resulted in loss of engine power while others traveling at highway speeds around me. Additionally the vehicle was smoking heavily and smelled of burning . The vehicle only had 64000 miles with an adequate maintenance record.

186.   On January 16, 2025, the owner of a 2022 Honda Pilot Submitted the following complaint to NHTSA:[100]

Main bearing failure causing crankshaft to seize

187.   On January 19, 2025, the owner of a 2022 Honda Pilot submitted the following complaint to NHTSA:[101]

Noticed rattling/knocking noise roughly in the area behind glove box around 1000-2000rpm or under load (e.g. driving uphill) when I took possession of vehicle around 18k miles. Had multiple shops/mechanics insist it was normal driving sounds. Noise became louder and more consistent. A Honda mechanic suspected a connecting rod bearing failure after a test drive and indicated it MIGHT be covered under recall. Took back to Honda dealership where technician found copious metal shavings in oil pan and irreparable crankshaft damage. Confirmed that this VIN is NOT currently covered by a recall. Recommended replacement with short block or USED engine.

188.   On January 31, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[102]

The contact owns a 2020 Honda Pilot. The contact stated that the vehicle was jerking while attempting to accelerate. The vehicle was taken to the dealer who diagnosed the vehicle with fuel injector failure. The fuel

BLOOD HURST & O' REARDON, LLP

---

[99] NHTSA ID: 11635266.

[100]    NHTSA ID: 11636286.

[101]    NHTSA ID: 11636903.

[102]    NHTSA ID: 11639945.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11

injector was replaced. The contact stated that the emissions light illuminated after the repair. The vehicle was taken to AutoZone who diagnosed that the catalytic convertor had failed and needed to be replaced. The vehicle was taken to the dealer and the catalytic convertor failure was confirmed. The catalytic converter was replaced. The emissions light was then blinking consistently with the TPMS, power steering, and other unknown warning lights intermittently illuminated. The contact stated that the vehicle was shaking abnormally while idling. The dealer was contacted, and an appointment was scheduled. The vehicle was not taken to be diagnosed or repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 60,000.

189.   On February 4, 2024, the owner of a 2022 Honda Pilot submitted the following complaint to NHTSA:[103]

2022 Honda pilot will have engine stall and will not accelerate while in motion. First time it happened was February 2024. Vehicle completely stalled in traffic and would no longer accelerate. Vehicle had to get pushed out of traffic and towed to Honda dealership. Honda service department replaced the transmission saying that was the issue and reason the vehicle engine was stalling. Vehicle has continually stalled but not as severe as the first time throughout the year of 2024. It is now 2025 and vehicle is progressively stalling more frequently. Honda says there is no recall for what is occurring to the 2022 Honda Pilot, but is now having the same engine stalling issue while in motion with their Honda Pilot 2023-2025 models having over 295,000 vehicles involved in a recall reported through National Highway Traffic Safety Administration. -Vehicle is available to inspection upon request. -Vehicle stalling at highway and rural speeds is placing driver, passengers and others at risk of collision. -Vehicle was taken into Honda Dealership in February 2024 and they replaced the transmission stating that was the issue but engine stalling it still occurring as of February 2025. -No warning lamps or messages appearing prior to engine stalling.

190.   On February 12, 2025, the owner of a 2018 Acura RLX submitted the following complaint to NHTSA:[104]

---

[103]   NHTSA ID: 11640577.
[104]   NHTSA ID: 11642306.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The contact owns a 2018 Acura RLX. The contact stated while driving 30 MPH, the oil change and tire rotation messages were displayed. The contact stated that a dealer was contacted. The contact stated that an oil change and tire rotation were performed, and the contact was informed that the engine was knocking. The contact received a call notification from the dealer two days after the vehicle was repaired regarding the connecting rod bearing. The contact was informed that the engine needed to be replaced. The vehicle was not repaired. The contact stated that the VIN was not included in NHTSA Campaign Number: 23V751000 (ENGINE AND ENGINE COOLING). The manufacturer was notified of the failure and stated that the issue would be escalated to a higher department. The failure mileage was 92,000.

191.   On February 14, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[105]

I have owned this vehicle since September 2021. Recently see a recall on engine stalling on Honda Pilot 2023-2025 model years. I have had this happen , engine stalling, twice on my 2022 Pilot. Reported the first incident to Honda dealer service and they said might be related to a software glitch, didn't think of it as any problem even though engine warning signal came on and I had to pull off the highway and stop engine and restart after several minutes. That solved the issue. Most recently this January the same thing happened again, lost power and engine light came on. Again I had to pull off the highway as I had no power to go over 30-35mph, could not resume speed limit to 55mph. What is most peculiar about this is that it happened at the same place as the first tome as I turned left from the highway.

192.   On February 27, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[106]

[XXX]: While driving on [XXX] in Pennsylvania, my check engine light illuminated in a tight construction zone with jersey barriers & speed limit of 55 mph during inclement weather. I chose to remain behind a tractor trailer driving under the speed limit for the remainder of the construction zone approximately 1 mile. Once out of the construction zone, I attempted to pass the truck in front of me; however, when I moved into

---

[105]    NHTSA ID: 11642723.
[106]    NHTSA ID: 11645410.

the passing lane, my vehicle would not accelerate to pass the truck placing myself and my 2 children in danger on [XXX] in inclement weather. Fortunately, I was able to safely return to the travel lane & then exited at the next exit which was about 2 miles away. I proceeded to a pull off right after the exit ramp & called my spouse. When he arrived, we decided to attempt to drive the vehicle home an alternate route; however, while driving about 2-3 miles the check engine light remained on & I was not able to accelerate beyond 35 mph. We decided to pull into our HS parking lot where I shut off my car for about 5 minutes. When the vehicle was restarted, the check engine light was no longer on, so we drove around the parking lot & the vehicle appeared to be operating normally allowing acceleration to occur, so we attempted to return home. While driving about 3 miles, the check engine light once again displayed as well as a series of other warnings. The vehicle began to shake and various noises were produced from the front end of the vehicle including what sounded like metal on metal grinding. ASAP, I proceeded to a parking lot to ensure safety for myself & children to stop the car and have it towed to a local mechanic, then to a Honda Dealership. After initial diagnostics, we were informed our engine failed & needed replaced due to what they suspected was a connecting rod bearing issue. Our engine is currently being replaced, but we informed them we wanted the defective engine held to be available for inspection for this investigation. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

193. On April 4, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[107]

2020 Honda Pilot has acceleration issues also. I forgot to list it in my last post. loss of power is evident. shaking, cruise control won't stay engaged. has trouble climbing incline roads. gas mileage is crap now. the 2020 Pilots should absolutely be included in the recall.

194. On April 7, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[108]

---

[107] NHTSA ID: 11652774.
[108] NHTSA ID: 11653171.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

Our 2020 Honda Pilot has 96,000 miles on it. We were traveling on the interstate and the engine light came on and an immediate grinding and knocking sound was heard. We pulled over on an exit ramp. We called AAA and had the vehicle towed 35 miles to the nearest city. The vehicle was determined to have a connecting rod bearing failure that required the engine to be replaced. I understand there is a potential recall for this issue for Honda vehicles, that includes the 2020 Honda Pilot. I wanted to provide this information to support the NHTSA's findings that there are issues with this engine that should not occur.

195.    On April 15, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[109]

My wife was driving the family down the highway I was a passenger. While we were traveling approximately 70mph down a 4 lane highway there was a loud clunk with a consistent knock and an immediate loss of power. I was able to help navigate her to safety on an off ramp so that my family would be safely off the road. The vehicle was towed to the Honda dealer where it is currently under warranty. The mechanics at the dealership have confirmed a spun bearing on piston number 3 and the motor will need to be replaced. There were zero warning lights and and no notification from any sensors with an OBD tool. Honda America is only willing to replace the motor with a salvaged motor. Unfortunately the VIN from the car with the salvaged motor will not match my current VIN, so if there is an active recall on the engine like on the previous year pilots that are VIN specific, I will not be covered and Honda will have replaced my engine with a known faulty one. I nor should and other family have to take the risk of receiving faulty salvaged Honda parts while still under factory warranty. The attached file is the last service records that are available for the salvaged engine and as you can see there is a noted vibration at the front in as well. Honda refuses to send the information from the salvage yard detailing the engine information including current mileage and the date the motor was pulled from the salvaged vehicle.

196.    On April 28, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[110]

---

[109]    NHTSA ID: 11654664.
[110]    NHTSA ID: 11657374.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

My 2020 Honda Pilot has 53k miles on it. I have have the vehicle for 8ths and 8k miles. The vehicle engine light suddenly began flashing and the vehicle began running rough. A loud knocking sound was coming from the engine when accelerating. The vehicle was taken to a Honda dealer and analyzed. The testing showed that the camshaft and cylinder #2 rod bearing was damaged to the point of the engine needing replacement. Upon research of the problem and damage found by the dealer, it matches a major issue found on many Honda's and Accura's. A manufacturing defect in the crankshaft leads to excessive wear and failure of the connecting rod bearings. This problem can cause the engine to suddenly seize or fail. Honda is currently refusing to cover the repair cost because the VIN of my vehicle isn't on the recall list.

197.   On May 9, 2025, the owner of a 2023 Honda Odyssey submitted the following complaint to NHTSA:[111]

MY 2023 Odyssey has 40K miles and the cam shaft bearing is deteriorating and my engine oil is full of shavings. The dealership is acting as if because I did not get my oil changed there, that it somehow isnt their fault and not covered under the warranty. This is an existing recall of these engines and nhtsa is investigating other years etc. Here is a video from the tech [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

198.   On June 13, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[112]

The contact owns a 2021 Honda Pilot. The contact stated that while driving at various speeds, there was an abnormal ticking sound coming from the engine compartment. The vehicle was taken to the local dealer who diagnosed that the main engine bearings and connecting rods had failed. The contact was advised that the engine needed to be replaced. The vehicle was not yet repaired. The manufacturer was not yet contacted. The failure mileage was 143,000.

---

[111]   NHTSA ID: 11659979.

[112]   NHTSA ID: 11666769.

CLASS ACTION COMPLAINT

199.  On July 15, 2025, the owner of a 2022 Honda Pilot submitted the following complaint to NHTSA:[113]

> As I understand it from a law firm, other Honda Pilot owners have filed complaints with the NHTSA the following which is an EXACT description of what is occurring on our Pilot. Ref: 25V-031. Our problem is that there is about a "2-5 second hesitation" or "delay in acceleration" where the engine seems to "bog down for a few seconds before it 'kicks in' and then there is a 'surge of power.'" This surge of power causes a rapid acceleration where the vehicle "jumps forward at a rapid rate." I took this to Honda two years ago after we first purchased it and they said that "All vehicles are made this way now." This has proven "very dangerous" when trying to do a 3-point turn or a u-turn in traffic. I'd be happy to demonstrate this with someone if they want to ride along so they can see for themselves. I checked your site but it says there aren't any recalls for my vehicle. Problem is, Honda told me the same thing two years ago so if it isn't on your site, appears that it isn't a problem for them. Please help look into this before someone in my family or someone else's gets hurt.

200.  On August 20, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[114]

> The bearings went out on cylinder number 5. The engine is torn down at the present time at the dealership. There was no warning. It is our understanding that other 3.5 l engines have had this happen. Our vehicle just wasn't included in this recall. I think the recall needs expanded.

201.  On August 28, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[115]

> I have a 2020 Honda Pilot (VIN [XXX] ) and have experienced RPM fluctuations when trying to maintain speed. I'm concerned these issues may be related to ODI investigation PE25008 and further use of my vehicle without having it inspected may result in a crash, fire and/or complete engine failure. The engine has not operated smoothly for months, and my mechanic has not been able to figure out why. It feels

---

[113]    NHTSA ID: 11673790.

[114]    NHTSA ID: 11681912.

[115]    NHTSA ID: 11683674.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

like the engine is struggling to maintain a steady RPM, leading to bouncing or surging in power. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

202.   On August 28, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[116]

The contact owns a 2021 Honda Pilot. The contact stated that while at a complete stop with the START/STOP feature activated, the engine shut off while depressing the accelerator pedal. There was no warning light illuminated. After waiting for several minutes, the contact had to perform several procedures to restart the vehicle. The vehicle was initially taken to a dealer where a software update was performed; however, the failure returned weekly. Recently, the contact stated that upon restarting the vehicle after the failure, the vehicle began to jerk while accelerating, with an abnormal tapping sound coming from the engine. The vehicle was taken to a dealer and was diagnosed with a defective engine rod bearing. The contact was informed by the mechanic that the repair could not be warranted. The vehicle was not repaired. The manufacturer was notified of the failure but offered no assistance. The contact was referred to the NHTSA Hotline to report the failure. The vehicle was not repaired. The failure mileage was approximately 15,000.

203.   On August 28, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[117]

The contact owns a 2021 Honda Pilot. The contact stated that while driving approximately 60 MPH, the brake pedal was depressed, and the vehicle lost motive power. The contact heard an abnormal rattling sound coming from the engine compartment. The contact stated that the check engine warning light was illuminated. The contact continued driving to the destination, parked the vehicle, and checked under the hood. The contact checked the oil level, which was normal. The vehicle was towed to a dealer. The dealer diagnosed the vehicle and determined that a connecting rod had failed and damaged the engine. The contact was advised by the dealer that the engine oil level was very low. The dealer determined that the engine needed to be replaced. The vehicle was not

---

[116]   NHTSA ID: 11683613.

[117]   NHTSA ID: 11683748.

CLASS ACTION COMPLAINT

repaired. The contact researched online and related the failure to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling); however, neither the VIN nor the model year was included. The manufacturer was informed of the failure. The failure mileage was approximately 72,000.

204.   On September 6, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[118]

Last time I changed my oil I had bronze colored flakes of metal in my oil. It looked like parts of the main connecting rod bearing material. No running problems YET, but will likely fail soon. I've kept up on oil changes every 5-7K. 89K on vehicle. Please do something about a full recall on this issue and include this report into the affected VINs.

205.   On September 9, 2025, the owner of a 2020 Honda Pilot submitted the following complaint to NHTSA:[119]

Engine auto off at an intersection. Would not restart. Burned up starter. Towed to Honda dealership. Rod bearing spun causing catastrophic damage to engine. Honda Care Extended warranty is covering at least part of the cost to replace either the shortblock, or possibly replace entire engine. No decision on which just yet.

206.   On September 29, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[120]

The contact owns a 2021 Honda Pilot. The contact stated that while his wife was driving 50 MPH, the engine seized, and the functions on the vehicle became inoperable. After waiting for an hour, the vehicle restarted. The contact was unaware if there were any warning lights illuminated. The contact stated that on a separate occasion, while the contact's wife was driving 30 MPH, the engine seized. No warning lights were illuminated. After waiting for a long while, the vehicle was restarted. The vehicle was taken to another dealer, Honda of Whittier; however, no cause for the failure was found. The dealer restarted the vehicle. The contact stated that the failure persisted. The vehicle was not

---

[118]   NHTSA ID: 11685430.

[119]   NHTSA ID: 11686007.

[120]   NHTSA ID: 11690380.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 15,000.

207.   On October 13, 2025, the owner of a 2024 Honda Ridgeline submitted the following complaint to NHTSA:[121]

> Between 1,000-1,400 rpm there is a lower end engine knock.sounds like a bearing.

208.   On October 23, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[122]

> Per the mechanic the rod bearing broke into the engine and caused sudden engine failure. I was on a highway when this occured, thankfully I was already in the right lane and right before an exit to which I took and secured the vehicle in a safe location. It was extremely dangerous location for this to occur and thankfully no one was right behind me. There were no warnings or messages prior to the incident. It was just routinely serviced within the past month. I heard a loud clank, the engine light started flashing, and the car started to slow down, there was knocking sounds in the engine. We had it towed to D and M service center then moved to Gillman Honda service center. It was confirmed by two different shops, D and M service center at 1029 Pat Booker Rd, Universal City, TX 78148 and Gillman Honda dealership at 16044 I-35 N Selma, TX 78154 that the rod bearing cracked into the engine and metal shavings were identified in the engine oil.

209.   On November 26, 2025, the owner of a 2016 Honda Pilots submitted the following complaint to NHTSA:[123]

> All engine rod bearings had to be replaced due to engine knocking. Vehicle had 61,379 miles when repair was performed 10/02/25. Repair was performed by the manufacturer's dealership.

---

[121]    NHTSA ID: 11693155.

[122]    NHTSA ID: 11695284.

[123]    NHTSA ID: 11701762.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

210.   On December 2, 2025, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[124]

> Yes available for inspection. Was driving on highway when my engine lost power. Almost crashed and almost got rear ended on the highway. Mechanic said something about piston rod bearings? Very loud knocking noise when car is started now . Not able to use. Only 100k miles. Fully maintained. Has to be part of recall soon? Recall is for piston rod bearings. Same issue my pilot has.

211.   On December 4, 2025, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[125]

> While driving home the car started making loud noises and lost power. I pulled over as quickly as possible and had the vehicle towed to a Honda dealer where they they reported: "New engine assembly (long block with heads) due to internal engine failure. Found metal shavings in engine oil when strained through filter and magnet ran across bottom of pan. includes engine replacement, gaskets and fluids" When researching my repair options I found that there were known issues with the 2016 Honda Pilot, but my vehicle was on included in the initial vin list.

212.   On December 5, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[126]

> Transmission is sluggish and the RPM's fluctuate between 1200 and 1400 at any speed going back and forth so the car has a back and fourth motion. Engine failure on 12/3/25 car stopped while driving. Makes a loud knocking sound. Most likely faulty bearings due to poorly engineered camshaft. White pear paint peeling since I purchased car. Capital Honda in San Jose unable to address any issue saying nothing is covered under warranty. These issues where taking place even while under warranty.

---

[124]   NHTSA ID: 11702435.

[125]   NHTSA ID: 11702952.

[126]   NHTSA ID: 11703275.

CLASS ACTION COMPLAINT

213. On December 8, 2025, the owner of a 2021 Honda Pilot submitted the following complaint to NHTSA:[127]

> When driving and wanting to accelerate at 65mph car just because limp, won't go when accelerating for a few seconds, speed drops, then you press back on the accelerator and after a few times the car goes back to normal. So, you loose control of the accelerator for a few seconds and you cant go faster, it just freezes and speed drops. This has been happen g for awhile. I even called Honda Corporate to advise them. It's been happening for over 2 years. It comes and goes. We are starting to hear a clunk noise now.

214. On December 10, 2025, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[128]

> Engine seized up and died. Towed to shop and needs to be replaced. There has been a recall on this model year due to an issue with rods in the engine, but I am being told my particular car does not qualify. Researching showed me that if any kind of claim was denied, to file a complaint with NHTSA.gov.

215. On December 11, 2025, the owner of a 2016 Honda Pilot submitted the following complaint to NHTSA:[129]

> We had road issues recently and the care stalled on Thanksgiving. We ended up having it towed to 2 mechanics, the final mechanic determined that this issue is a recall for other Hondas. Ours is not listed. I called the recall hotline and they will not fix the car under the recall because they did not add our VIN number to the recall. They informed us we could pay for the repair and keep our receipt for reimbursement if/when the VIN number is added. I was not happy with this outcome as if it's a problem with other vehicles why are we not being added. The recall is "a manufacturing defect in the connecting rod bearing that could cause the engine to seize and fail, leading to stalling while driving."

---

[127]    NHTSA ID: 11703797.

[128]    NHTSA ID: 11704319.

[129]    NHTSA ID: 11704506.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

216.   On December 11, 2025, the owner of a 2023 Honda Ridgeline submitted the following complaint to NHTSA:[130]

> The contact owns a 2023 Honda Ridgeline. The contact stated that while driving at various speeds, there was an abnormal clicking sound coming from the vehicle. The contact stated there was no warning light illuminated. The contact had taken the vehicle to a local dealer, where it was inspected and determined that there was potential damage to the bearings and that the crankshaft and the short block needed to be replaced. The vehicle was not repaired. The manufacturer was not informed of the failure. The contact researched online and related the failure to NHTSA Campaign Number: 23V751000 (Engine and Engine Cooling). The contact stated that the recall covered older model Honda Ridgelines. The failure mileage was approximately 82,000.

217.   The above complaints are a sample of the hundreds posted to NHTSA's website and reflected in Defendants' internal documents.

218.   Owners and lessees of the Class Vehicles have also reported the Defect on social media platforms and online forums, including Honda and Acura owner forums such as "piloteers.org", "passportforums.com", and "mdxers.org."

219.   Below is a sample of complaints posted to those forums:

- "Found this website after our engine failed on the freeway two days ago. Clicking noise started, engine light turned on, then every other system light came on!!! Power steering failure, emission system failure, brake failure, etc. Then smoke started pouring out of the hood. We were able to coast off to the side of the road and waited an hour in a storm for roadside assistance from our Honda Dealer. This is the seventh Honda we have owned and we have never had issues with our cars - even with more than 200,000 miles. To say that we were completely shocked and taken off guard by this is an understatement. Most of our oil changes were done at the dealer and they have record of it. The mechanics could not believe what they saw and said they had never seen this happen. There was a one inch hole in the bottom of the engine and oil had leaked and sprayed everywhere.

---

[130]   NHTSA ID: 11704454.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

Everything, including the timing belt inspected at our last dealer tune up were in good shape. New engine - $17,000!!!!!"[131]

- "We bought a 25 pilot in March and we took it in for a clunking sound on July 22nd and I haven't seen my car since... we are currently 6/10 on a list waiting for a new engine for a vehicle with 6,000 miles on it. I have been at the dealers throat about the lack of communication and overall crappy service they have given us. Honda corporate has denied my civil request for a replacement vehicle by September 1st if they cannot provide a set date to have an engine, we are looking into attorneys for Lemon Law."[132]

- "I have a 2022 Honda Odyssey...just had the van dropped off at the dealer with severe rod knock that came out of nowhere and a dashboard disco party. 68,000 miles with regular fluid changes and Dealership acted like they'd never seen it before. I am seriously worried at this point. What gives?[133]

- "I hate to sound sour, I understand that problems happen. But for me, it's how a company deals with those problems that makes the difference. I have a 2016 MDX with 79,000 miles on it that seized a rod bearing and broke rod #1 in December of 2023. My VIN is not listed on the recall, even though Acura made a statement that they were "still evaluating the extent of the problem". Well my car had the problem and seems to me the recall should be extended to cover it. But they refuse to do so. It was a well maintained car and in fact had just had an oil change the week before it happened. Jody Wilkinson Acura in Salt Lake City evaluated the engine and reported that it was a connecting rod bearing that caused the problem, yet Acura refuses any responsibility. As for me, I will not buy another Acura no matter how nice the car is as long as they refuse to stand behind their

[131]    https://www.piloteers.org/threads/2016-honda-pilot-engine-failure-with-67-000-miles-and-consistent-maintenance-mostly-with-honda-dealer.178725/

[132]    https://www.reddit.com/r/hondapilot/comments/1mp7qzx/2025_honda_pilot_quality_issues/

[133]    https://www.passportforums.com/threads/investigation-for-3-5-v6-engine-announced.12087/

CLASS ACTION COMPLAINT

products. I asked Jody Wilkinson how much my car was worth as it is; he said, "Well if we had it, to be honest we would just sell it for scrap metal". It is a very nice car to look at and sit in, but it's totally worthless to me. They want $20,000 to replace the engine. Why would I do that? My first engine only lasted 79k and they won't stand behind their products. Let's face it, well maintained engines don't throw rods at 79k! I don't trust Acura any longer. See attached communication and photos."[134]

220. Upon information and belief, Honda monitors social media platforms and online forums, including Honda forums. Accordingly, Honda is and was aware of the numerous, widespread complaints about the Defect in the Class Vehicles.

221. Honda knew that the Defect was present in all Class Vehicles but has failed to recall all Class Vehicles and provide an adequate remedy.

222. Specifically, Honda's recall efforts have been insufficient because Honda neither disclosed the full extent of the Defect nor provided a repair that resolves the underlying issue. Many Class Members whose Class Vehicles were excluded from the recall or received incomplete repairs continue to experience engine failures.

223. Honda's unconscionable acts deprive Class Members of an adequate remedy, if one is devised and implemented.

224. The Defect renders the Class Vehicles inoperable and creates an unreasonable risk of injury or death to Plaintiff, Class Members, and others, and, thus, the Class Vehicles are not fit for their ordinary purpose.

### 3. Warranty Data

225. Honda also knew about the Defect from its warranty data. Per the TREAD Act, Honda tracks customer complaints, vehicle diagnoses, and repairs from

---

[134] https://www.mdxers.org/threads/concern-with-acura-honda-3-5l-engine-investigation.184557/

BLOOD HURST & O' REARDON, LLP

dealership technicians in a single, aggregated database.[135] Honda employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings.[136] For every one complaint filed with NHTSA, Honda likely receives hundreds or thousands of related warranty claims.[137] Accordingly, Honda has likely received thousands of Defect warranty claims from the start of production.

226.   Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, Honda knew the Defect was present in all Class Vehicles, but it has not disclosed the Defect or provided an adequate repair to all Class Vehicles. Honda's halfhearted and unconscionable acts deprived and continues to deprive Plaintiff and Class Members of the benefit of their bargain. Had Plaintiff and Class Members known what Honda knew about the Defect, they would not have purchased their Class Vehicles or certainly would have paid less to do so.

### 4.     Honda's Recall Related to the Defect

227.   On November 8, 2023, after years of investigations, Honda determined a safety defect existed and initiated a stop sale and Recall 23V-751 for certain model year 2015–2020 Acura TLX, 2016–2020 Acura MDX, 2016 and 2018–2019 Honda Pilot, 2018–2019 Honda Odyssey, and 2017 and 2019 Ridgeline vehicles. According to Honda, the number of defective vehicles was 248,999.

---

[135]     https://one.nhtsa.gov/nhtsa/announce/testimony/tread.html

[136]     https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V439-2939.PDF

[137]     https://static.nhtsa.gov/odi/rcl/2017/RMISC-17V418-5009.pdf (zero field reports, 3,826 warranty claims).

228.   Honda reported to NHTSA that the root cause was traced to improper crankshaft manufacturing, specifically crank pins ground out of specification, resulting in a convex shape, causing increased friction, accelerated bearing wear, and potential engine seizure. Symptoms of the failure included abnormal engine noise, stalling, decreased output, and check engine lamp illumination.

229.   Honda determined the risk to the public was significant, as the engine failure leads to loss of motive power, crash, fire, or injury.

230.   Honda issued a revised Recall 23V-751 on November 16, 2023, and again on June 12, 2024, but did not expand the recall to cover any additional vehicles.

231.   Despite Honda's acknowledgement that engine failure poses a safety risk involving loss of motive power and associated crash and fire risk, Honda limited Recall 23V-751 and did not provide relief to owners whose vehicles exhibit the same failure characteristics outside the scope of the recall.

232.   In practice, Honda's limited recall approach and warranty handling left Class Members without an adequate repair or reimbursement. Owners reporting abnormal Engine noise, loss of power, and catastrophic failure were repeatedly told their vehicles were outside the recall scope or otherwise denied coverage, forcing them to pay thousands of dollars out of pocket for diagnosis, repair, or Engine replacement, or to continue operating vehicles that remain at risk of sudden Engine failure.

233.   The recall fails to address or remedy the underlying Defect, which is related to inadequate design of components within the rotating assembly and/or excessive operating or idling temperatures, among other things.

234.   These fundamental issues remain uncorrected, leaving Class Vehicles at continued risk despite the recall action.

235.   As detailed below, NHTSA's subsequent escalation of its investigation confirms that these same failure characteristics continued to occur outside the scope of Recall 23V-751.

CLASS ACTION COMPLAINT

### 5.    NHTSA'S On-Going ODI Investigation

236.    On August 20, 2025, NHTSA's Office of Defects Investigation ("ODI") opened Preliminary Evaluation PE25008 in response to 414 consumer reports of connecting rod bearing failures in the 3.5L V6 engine used in model years 2018–2020 Acura TLX, model years 2016–2020 Acura MDX, model years 2016–2020 Honda Pilot, model years 2018–2020 Honda Odyssey, and model years 2017–2019 Honda Ridgeline, representing an estimated population of 1,410,806 vehicles.

237.    ODI's review found 3,012 total incidents reported (including manufacturer and ODI data), with 7 involving crashes or fires, but no injuries or fatalities. Importantly, ODI determined that these engine failures are outside the scope of Honda Recall 23V-751 and are not caused by the same crankshaft defect.

238.    The ODI's investigation is on-going.

### 6.    Honda Touted the Safety, Quality, and Reliability of the Class Vehicles, Concealing the Defect

239.    Despite knowing of the Defect in the Class Vehicles, Honda currently dedicates a page on its website to "Safety" where Honda thoughts the safety of is vehicles, including a "collision free future."[138]



---

[138]    https://www.honda.com/safety (last visited October 15, 2025).

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

240.   Honda also made similar representations and omissions when marketing the Class Vehicles. For example, Honda directly marketed the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media, which impart a uniform and persuasive marketing message.

241.   In the sales brochure for the 2016 Honda Pilot, Honda advertised "Sensible Safety."[139]

242.   In the sales brochure for the 2017 Honda Pilot, Honda stated that it was "looking out for you."[140]

243.   In the sales brochure for the 2018 Honda Odyssey, Honda stated that the vehicle was "solid on safety."[141]

244.   In the sales brochure for the 2019 Honda Odyssey, Honda stated that it strives to provide safety features that "ensure the safety of the occupants" and that this gives the occupants "peace of mind" while driving.[142]

245.   In the sales brochure for the 2017 Acura MDX, Honda boasted that its vehicle protect "your back, your front, and your sides."[143]

246.   In the sales brochure for the 2018 Acura MDX, Honda boasted that its vehicles are "safe enough for . . . families to ride in" and that its goal is to exist in a world where there are zero collisions.[144]

---

[139]   https://automobiles.honda.com/images/2016/pilot/downloads/2016-pilot-brochure.pdf

[140]   https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/Pilot/Pilot-Brochures/V2/MY17_Pilot_Online_Brochure.pdf

[141]   https://www.daltshondaorillia.com/pdf/2018-honda-odyssey.pdf

[142]   https://www.daltshondaorillia.com/pdf/2019-odyssey.pdf

[143]   https://www.auto-brochures.com/makes/acura/tlx/Acura_US%20TLX_2017.pdf

[144]   https://www.auto-brochures.com/makes/acura/mdx/Acura_US%20MDX_2018.pdf

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

247.   In the sales brochure for the 2019 Acura MDX, Honda stated that occupant safety is the "top priority."[145]

248.   Honda consistently promoted the Class Vehicles as safe, while knowingly omitting and concealing information about material defects in the Class Vehicles from consumer, including Plaintiff and the other Class members.

249.   Had Honda disclosed the Defect, Plaintiff and the other Class members would not have purchased their Class Vehicles or would have paid less for them.

### 7.    Authorized Dealers Are Honda's Agents and Plaintiff and Class Members Are Third Party Beneficiaries

250.   Honda controls its dealerships, and the dealerships act for the benefit of Honda.

251.   Namely, Honda controls, among other things, what vehicles the dealerships sell; the number of vehicles supplied to dealerships (based on sales performance); how dealerships market the vehicles; what incentives and rebates a dealership can offer; the layout of dealerships, including logo placements; and how to diagnose and repair issues. Moreover, when dealerships sell the vehicles to consumers, they bind Honda to a contract (e.g., warranties).

252.   Honda "sells" the vehicles to dealerships. Plaintiff and Class Members are third-party beneficiaries of these sales contracts between dealerships and Honda because the terms of the contracts, such as the warranties, are for the benefit of the end user, not the dealerships, and Honda designed, manufactured and marketed the Class Vehicles intending that they would be purchased by consumers such as Plaintiff and Class Members.

### 8.    Honda Received Pre-Suit Notice Multiple Times and in Multiple Ways

---

[145]   https://www.auto-brochures.com/makes/acura/mdx/Acura_US%20MDX_2019.pdf

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

253.   Honda possessed comprehensive and exclusive awareness of the Defect, as outlined previously in Section B. Furthermore, due to Honda's thorough understanding of the Defect, the concealed nature of the Defect, and Honda's proven inability to address it, any further requirement for notice would be pointless.

### 9.    Applicable Warranties

254.   Honda issued a New Vehicle Limited Warranty for the Class Vehicles. Honda issued its Limited Warranty for the benefit of Plaintiff and Class Members, and for the purpose of persuading Plaintiff and Class Members to purchase the Class Vehicles.

255.   Honda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

256.   The Class Vehicles sold and leased by Honda included a written express warranty, which provides: "All new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle Limited Warranty, plus a 5-Year/60,000-Mile Powertrain Limited Warranty."[146]

257.   Honda instructs vehicle owners and lessees to take their Class Vehicles to a Honda-certified dealership for warranty repairs. Many owners and lessees have presented their Class Vehicles to Honda-certified dealerships with complaints arising from the Defect and have been denied a free repair.

258.   Honda has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective, and (2) refusing to perform and/or failing to timely issue adequate repairs to correct the Defect.

259.   Moreover, Honda's warranty fails in its essential purpose because the company has failed to offer an effective and permanent repair for the Defect. Rather,

---

[146]

https://owners.honda.com/Documentum/Warranty/Handbooks/AWL00476.pdf (last visited October 1, 2025)

Blood Hurst & O' Reardon, LLP

Honda simply replaces defective connecting rods and other failed components with equally defective connecting rods and other failed components and fails to correct and/or properly diagnose the underlying cause.

260.   Honda has notice of its breach and fraud based on its actual and exclusive knowledge of the Defect.

261.   Moreover, Honda's failure to effectively repair the Defect makes any notice requirement futile.

262.   Both warranties are applicable to the Defect; however, Honda has failed to correct the issue.

263.   Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."

264.   Each Class Vehicle's original engine is included in the New Vehicle Limited Warranty. This includes "[c]ylinder block and head and all internal parts, timing gears and gaskets, timing chain/belt and cover, flywheel, valve covers, oil pan, oil pump, intake and exhaust manifolds, engine mounts, engine/powertrain control module, water pump, fuel pump, seals and gaskets."[147]

265.   The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."[148]

266.   Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

267.   Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product

---

[147]   *Id.*

[148]   *Id.*

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

without informing consumers about the Defect.

268.    The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members.

269.    Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.

270.    A gross disparity in bargaining power existed between Honda and other Class Members, and Honda knew of the Defect at the time of sale.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

271.    Plaintiff and the other Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicle was defective within the time period of any applicable statutes of limitation.

272.    Neither Plaintiff nor the other Class Members knew or could have known of the Defect in their Class Vehicles.

### B.    Fraudulent Omission Tolling

273.    Throughout the time period relevant to this action, Honda concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Defect described herein.

274.    Indeed, Honda kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the defect, even upon reasonable exercise of diligence.

275.    Specifically, since 2015, Honda has been aware that the 3.5L Engines installed in the Class Vehicles were defective.

276.    Despite its knowledge of the Defect, Honda failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have done so through

BLOOD HURST & O' REARDON, LLP

1    individual correspondence, media release, or by other means.

2        277.   Honda affirmatively and actively concealed the Defect when it continued

3    marketing the Class Vehicles and introducing new vehicles with this Engine, despite

4    knowing that it was defective.

5        278.   Plaintiff and the other Class Members justifiably relied on Honda to

6    disclose the Defect in the Class Vehicles that they purchased or leased, because that

7    defect was hidden and not discoverable through reasonable efforts by Plaintiff and the

8    other Class Members.

9        279.   Thus, the running of all applicable statutes of limitation have been

10    suspended with respect to any claims that Plaintiff and the other Class Members have

11    sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

12    **C.    Estoppel**

13        280.   Honda knew about the Defect since at least 2015.

14        281.   However, Honda did not disclose the Defect to Plaintiff or the other

15    Class Members, nor did Honda warn Plaintiff and Class Members of the dangers of

16    the Defect.

17        282.   Instead, Honda continued to mass-market the Class Vehicles solely for

18    the purpose of generating revenues for Honda's benefit.

19        283.   Honda still has not released a countermeasure to remedy the Defect.

20        284.   Because of Honda's unwillingness to provide adequate repairs, Plaintiff

21    and Class Members were led to believe that no problem existed or that the issue was

22    resolved, only to find out it would later fail again. Honda was merely replacing

23    defective components with other equally defective components, rather than

24    eliminating the Defect for good.

25        285.   Honda was under a continuous duty to disclose to Plaintiff and the other

26    Class Members the true character, quality, and nature of the Class Vehicles.

27        286.   Honda knowingly concealed the true nature, quality, and character of the

28    Class Vehicles.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

287.   Based on the foregoing, Honda is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

288.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following classes:

> Nationwide Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States Territories and/or possessions.

> Ohio Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Ohio.

289.   Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

290.   Excluded from the Classes are HML and AHM and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

291.   This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

292.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believe that there are thousands of Class Members, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Honda's books and records. Class Members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

293. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

    a.    whether Honda engaged in the conduct alleged herein;

    b.    whether Honda's alleged conduct violates applicable law;

    c.    whether Honda designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

    d.    whether Honda misled Class Members about the quality of the Class Vehicles;

    e.    whether the Class Vehicles contain the Defect;

    f.    whether Honda had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiff and the other Class Members;

    g.    whether Honda's omissions and concealment regarding the quality of the Class Vehicles were deceptive in violation of state consumer protection laws;

    h.    whether Honda breached its express warranty to the Class Members with respect to the Class Vehicles;

    i.    whether Class Members overpaid for their Class Vehicles as a result of the Defect alleged herein;

    j.    whether Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

    k.    the amount and nature of relief to be awarded to Plaintiff and the

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

1    other Class Members.

2    294.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's

3    claims are typical of the other Class Members' claims because Plaintiff and the other

4    Class Members purchased or leased Class Vehicles with a uniform defect arising from

5    the same or substantially similar Engine design and specifications relevant to the

6    Defect, and Class Members suffered the same injury stemming from the same Engine

7    Defect. Neither Plaintiff nor the other Class Members would have purchased the Class

8    Vehicles, or would have paid less for the Class Vehicles, had they known of the Defect

9    in the Class Vehicles. Plaintiff and the other Class Members suffered damages as a

10   direct proximate result of the same wrongful practices in which Honda engaged.

11   Plaintiff's claims arise from the same practices and course of conduct that give rise to

12   the claims of the other Class Members. Accordingly, Plaintiff's claims are typical of

13   those of Class Members who own or lease other Class Vehicle models because those

14   vehicles share the same or substantially similar defective Engine design as alleged

15   herein.

16   295.  **Adequacy of Representation – Federal Rule of Civil Procedure**

17   **23(a)(4).** Plaintiff is an adequate Class representative because their interests do not

18   conflict with the interests of the other members of the Class that they seek to represent,

19   Plaintiff has retained counsel competent and experienced in complex class action

20   litigation, and Plaintiff intends to prosecute this action vigorously. The Class's

21   interests will be fairly and adequately protected by Plaintiff and her counsel.

22   296.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure**

23   **23(b)(2).** Honda has acted or refused to act on grounds generally applicable to

24   Plaintiff and the other Class Members, thereby making appropriate final injunctive

25   relief and declaratory relief, as described below, with respect to the Class Members

26   as a whole.

27   297.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action

28   is superior to any other available means for the fair and efficient adjudication of this

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Honda, so it would be impracticable for the Class Members to individually seek redress for Honda's wrongful conduct. Even if the Class Members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**CLAIMS FOR RELIEF**

**COUNT 1**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

**CAL. BUS. & PROF. CODE § 17200**, *et seq.*

**(Individually and on Behalf of the Nationwide Class)**

298.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

299.    Plaintiff brings this Count individually and on behalf of the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Unfair Competition Law (the "UCL") as applied to the facts of this case, or, in the alternative, on behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, where it maintains its headquarters, and the challenged conduct—including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling of consumer

84

CLASS ACTION COMPLAINT

1    complaints and corrective-action decisions, including the deficient 2023 recall—

2    emanated from Honda's California offices. California therefore has a significant

3    aggregation of contacts with each Class Member's claims sufficient to satisfy

4    constitutional due process. Further, under California's choice-of-law rules, California

5    law may be applied on a classwide basis because the interests of other states do not

6    materially conflict with California's strong interest in regulating misconduct that

7    originated within its borders. To the extent any material conflict is shown at the class

8    certification stage, Plaintiff reserves the right to propose subclasses or pursue claims

9    under the laws of individual states as appropriate.

10       300.   The Unfair Competition Law, Business & Professions Code §17200, *et*

11   *seq*. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent"

12   or "unfair" business act or practice and any "unfair, deceptive, untrue or misleading

13   advertising."

14       301.   In the course of conducting business, Honda committed "unlawful"

15   business practices by, *inter alia*, omitting and misrepresenting material facts

16   concerning the safety and reliability of the Class Vehicles, making deceptive

17   representations as set forth more fully herein (which also constitute advertising within

18   the meaning of Bus. & Prof. Code §§ 17200 and 17500), and violating Civil Code

19   §§ 1770(a)(5), (7), (9) and (16) under the CLRA, Business & Professions Code §

20   17500, *et seq.*, the Song-Beverly Consumer Warranty Act, Civ. Code § 1790, *et seq.*,

21   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and the common law,

22   including breach of express warranty, implied warranty, fraudulent omission, unjust

23   enrichment, and the other laws alleged herein. Defendant's above-described wrongful

24   acts and practices also constitute actual and constructive fraud within the meaning of

25   Civil Code §§ 1572 and 1573, as well as deceit, which is prohibited under Civil Code

26   §§ 1709 and 1711.

27       302.   Plaintiff and the Class reserve the right to allege other violations of law

28   constituting other unlawful business acts or practices as discovery proceeds. Honda's

BLOOD HURST & O' REARDON, LLP

85

unlawful conduct at issue is ongoing and continues to this date.

303. Honda's omissions, non-disclosures, acts, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL, in that Honda's conduct was substantially injurious to consumers, offended public policy, and was unethical and unscrupulous. By concealing and misrepresenting material safety facts Honda violated the "unfair" prong of the UCL because its conduct contravenes established public policies embodied in the CLRA, which prohibits deceptive omissions and misrepresentations in consumer transactions, the Song-Beverly Consumer Warranty Act, which requires manufacturers to honor their express warranties and ensure that goods conform to their promises, and Section 5 of the FTC Act, which bars unfair or deceptive practices in commerce. These policies collectively reflect a strong legislative determination that consumers must be protected from unsafe, defective, and deceptively marketed products, and Plaintiff reserves the right to identify additional public policy violations as discovery proceeds. While Plaintiff and the other Class Members were harmed, Honda was unjustly enriched by its violations of consumer protection and unfair competition laws.

304. As a result of their reliance on Honda's omissions and/or misrepresentations, owners and lessees of the Class Vehicles have suffered injury in fact and have lost money as a result of Honda's unfair conduct, including an ascertainable loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles.

305. Honda's above-described wrongful acts and practices also constitute "fraudulent" business acts and practices within the meaning of California Business and Professions Code § 17200 in that the representations and omissions described herein are false, misleading and/or likely to deceive reasonable consumers. Honda knew that the Class Vehicles suffered from the inherent Defect, were defectively designed and/or manufactured, and were not suitable for their intended use. In

CLASS ACTION COMPLAINT

misrepresenting the Class Vehicles and failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so. The facts misrepresented, concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether to purchase or lease Honda's Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles suffered from the Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

306. Honda continues to conceal the defective nature of the Class Vehicles and the Defect even after Plaintiff and the other Class Members began to report problems. Indeed, Honda continues to cover up and conceal the true nature of this systematic problem today. Honda's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members.

307. Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business and were capable of deceiving a substantial portion of the purchasing public.

308. As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

309. Through its unfair acts and practices, Honda has improperly obtained money from Plaintiff and Class Members. As such, Plaintiff requests that this Court cause Honda to restore this money to Plaintiff and all Class Members, and to enjoin Honda from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

310. Plaintiff and the Class lack an adequate legal remedy to address Honda's misconduct. Legal damages alone cannot remedy the full extent of the harm because

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

Plaintiff and Class members continue to own and drive their Class Vehicles and remain exposed to the Defect in the Engine that Honda continues to conceal and refuses to fix, and damages do not prevent Honda from continuing to misrepresent and conceal the safety risks associated with the Class Vehicles. Restitution is necessary to restore to Plaintiff and the Class the monies wrongfully obtained by Honda, and injunctive relief is required to ensure that Honda discloses the Defect and ceases its unlawful conduct. In any event, any legal remedy that does exist is not as prompt, certain, or efficient as the equitable remedies sought, including because the claims giving rise to potential damages are subject to legal defenses and more stringent elements not applicable under the UCL, and the scope of actionable misconduct under the unfair prong of the UCL is broader than other available claims. Even if Plaintiff prevails and recovers legal damages under certain claims, those remedies may represent recovery for different harm than that which could be remedied under the UCL. Thus, Plaintiff may be entitled to restitution or injunctive relief under the UCL even if legal damages are unavailable, limited, or directed at different injuries. Plaintiff pleads this claim separately and in the alternative under Fed. R. Civ. P. 8(a)(3), such that if the Court dismisses or enters judgment against Plaintiff on her damages claims, she will otherwise lack an adequate remedy at law.

## COUNT 2

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA")**

**CAL. CIV. CODE § 1750, *et seq.***

**(Individually and on Behalf of the Nationwide Class)**

311.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

312.    Plaintiff brings this Count individually and on behalf of the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Consumers Legal Remedies Act (the

"CLRA") as applied to the facts of this case, or, in the alternative, on behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, where it maintains its headquarters, and the challenged conduct— including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling of consumer complaints and corrective-action decisions, including the deficient 2023 recall— emanated from Honda's California offices. California therefore has a significant aggregation of contacts with each Class Member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's strong interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiff reserves the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

313.    Honda is a "person" as defined by California Civil Code § 1761(c).

314.    Plaintiff and the Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

315.    By failing to disclose and concealing the Defect from Plaintiff and the other Class Members, Honda violated California Civil Code § 1770(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9).

316.    Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

BLOOD HURST & O' REARDON, LLP

317.   Honda knew that the Class Vehicles suffered from the inherent Defect, were defectively designed or manufactured, and were not suitable for their intended use.

318.   Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles and/or the associated repair costs because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their Class Vehicles have a dangerous safety Defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

319.   By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

320.   The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles are defective, they would not have purchased the Class Vehicles or would have paid less for them.

321.   Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles and their engines.

322.   As a result of Honda's misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their Engines are defective and require repairs or replacement.

323.   As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

90

324. Pursuant to § 1782 of the CLRA, by letter dated January 12, 2026, attached as Exhibit A, Plaintiff notified Honda in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Honda rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

325. If Honda fails to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

326. Honda's conduct is fraudulent, wanton and malicious.

327. Pursuant to California Civil Code §§ 1780(a), 1780(e) and 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Honda, for restitution and disgorgement, attorneys' fees and costs, and any other relief the Court deems proper.

328. Plaintiff and the Class lack an adequate remedy at law to address Honda's violations of the CLRA. Legal damages alone cannot remedy the full extent of the harm because Plaintiff and Class members continue to own and drive their vehicles and remain exposed to the defective Engines, and damages do not prevent Honda from continuing to misrepresent and conceal the safety risks associated with the Class Vehicles. Restitution is necessary to restore to Plaintiff and the Class the monies wrongfully obtained by Honda, and injunctive relief is required to ensure that Honda discloses the Defect and ceases its unlawful conduct. Accordingly, equitable relief under Civil Code § 1780(a)(2) is proper.

329. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT 3
## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
## OHIO REV. CODE ANN. §§ 1345.01, *et seq.*
## (Individually and on Behalf of the Ohio Class)

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

330.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

331.   Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

332.   Defendants, Plaintiff, and the other Class Members are "persons" within the meaning of Ohio Rev. Code Ann. § 1345.01(B). Defendants are a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(C).

333.   Plaintiff and the other Class Members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase and lease of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

334.   Ohio Rev. Code Ann. § 1345.02 of the Ohio Consumer Sales Practices Act ("CSPA") prohibits unfair or deceptive acts or practices in connection with consumer transactions. As described herein, Defendants engaged in unfair and deceptive acts and practices in connection with consumer transactions in violation of Section 1345.02.

335.   In the course of Defendants' business, Defendants violated the CSPA by selling Class Vehicles with the Defect that may result in the Engines failing prematurely, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, or negligently concealing or suppressing material facts concerning the Defect in the Class Vehicles.

336.   Defendants committed deceptive acts or practices in violation of the CSPA by representing that the Class Vehicles: have "sponsorship, approval, performance characteristics, accessories, uses or benefits that [they do] not have" (Ohio Rev. Code Ann. § 1345.02(B)(1)); are of "a particular standard, quality, grade, style, prescription, or model" when they are not (Ohio Rev. Code Ann. § 1345.02(B)(2)); and have "been supplied in accordance with a previous

BLOOD HURST & O' REARDON, LLP

representation" when they have not (Ohio Rev. Code Ann. § 1345.02(B)(5)).

337.   Defendants have committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the Class Vehicles with the Defect, knowingly concealing the Defect in the Class Vehicles, and failing to inform Plaintiff and the other Class Members of this Defect.

338.   Defendants knew or should have known that their conduct violated the CSPA.

339.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants as detailed in this Complaint, including, but not limited to, the failure to honor both its express and implied warranties; and the concealment and/or non-disclosure of a substantial defect, constitute deceptive practices in violations of the CSPA. These cases include, but are not limited to:

    a. *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b. *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

    c. *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.  *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

    g. *Cranford v. Joseph Airport Honda, Inc.* (OPIF #10001586);

    h. *Brown v. Spears* (OPIF #10000403);

    i. *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

    j. *Mosley v. Performance Mitsubishi AKA Automanage* (OPIF #10001326); and

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

1    k. *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

2    340.   Defendants' unfair or deceptive acts or practices were likely to, and did,

3  in, fact, deceive consumers, including Plaintiff and the other Class Members, about

4  the true reliability, dependability, efficiency, and quality of the Class Vehicles.

5    341.   Plaintiff and the other Class Members suffered ascertainable loss and

6  actual damages as a direct result of Defendants' concealment of and failure to disclose

7  material information, namely, the Defect. Plaintiff and the other Class Members who

8  purchased or leased the Class Vehicles would not have done so, or would have paid

9  significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff

10 and the other Class Members also suffered diminished value of their vehicles.

11   342.   Defendants had notice of their conduct as alleged herein.

12   343.   Defendants are liable to Plaintiff and the other Class Members for

13 damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code

14 Ann. § 1345.09.

**COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**OHIO REV. CODE ANN. §§ 1302.26 AND 1310.17**
**(Individually and on behalf of the Ohio class)**

344.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

345.   Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

346.   Honda is a merchant with respect to the Class Vehicles.

347.   In their written express warranty, Honda expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.

348.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class

BLOOD HURST & O' REARDON, LLP

1   Vehicles equipped with the defective Engines.

2      349.   Honda breached the express warranty to repair defects in materials and

3   workmanship within the Class Vehicles. Honda has not repaired, and has been unable

4   to repair, the Class Vehicles' materials and workmanship defects.

5      350.   Honda was notified of its breach and the Defect when Plaintiff

6   Messenger presented her Class Vehicle to an authorized Honda dealership

7   complaining of the vehicle's Engine knocking. Plaintiff provided Honda a reasonable

8   opportunity to cure through its authorized dealer network, but Honda failed to do so.

9   Honda also received notice of the Defect through numerous complaints made directly

10   to Honda, through its dealer network, and through consumer complaints submitted to

11   NHTSA which Honda reviews as part of its safety monitoring and compliance

12   obligations, as well as through Honda's own internal engineering knowledge, testing,

13   and warranty data. Honda has not repaired Plaintiff's Class Vehicle to cure the Defect,

14   and Honda has not provided a repair, replacement, or other remedy that effectively

15   remedies the Defect in the Class Vehicles.

16      351.   Furthermore, the limited warranty of repair fails in its essential purpose

17   because the contractual remedy is insufficient to make Plaintiff and the other Class

18   Members whole and because Honda has failed and/or has refused to adequately

19   provide effective remedies within a reasonable time.

20      352.   Accordingly, recovery by Plaintiff and the other Class Members is not

21   limited to the limited warranty of repair to parts defective in materials and

22   workmanship, and Plaintiff, individually and on behalf of the other Class Members,

23   seeks all remedies as allowed by law.

24      353.   Also, as alleged in more detail herein, at the time that Honda warranted

25   and sold the Class Vehicles it knew that the Class Vehicles did not conform to the

26   warranty and were inherently defective, and Honda improperly concealed material

27   facts regarding its Class Vehicles. Plaintiff and the other Class Members were,

28   therefore, induced to purchase or lease the Class Vehicles under false pretenses.

354. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Honda's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class Members' remedies would be insufficient to make Plaintiff and the other Class Members whole.

355. Honda had notice of its breach as alleged herein.

356. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

**COUNT 5**
**BREACH OF IMPLIED WARRANTY**
**(Individually and on behalf of the Ohio class)**

357. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

358. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

359. Honda manufactured and sold the defective Class Vehicles to Plaintiff and the other Class Members.

360. The Class Vehicles are defective and not fit for driving because they have a defective Engine, which may result in Engines failing prematurely, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants. A properly functioning engine is critical to the safe operation of a vehicle. When the engine malfunctions, resulting in malfunction and complete failure, as happens in the Class Vehicles, the vehicle does not provide safe, reliable transportation.

361. The engine Defect existed at the time the Class Vehicles left the control of Honda.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

362.   Based upon these Defect, Honda has failed to meet the expectations of a reasonable consumer. The Class Vehicles have failed in their ordinary, intended use, because they suffer from the Defect, causing Engines to potentially fail, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants.

363.   Honda had notice of its breach as alleged herein.

364.   The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiff and the other Class Members.

**COUNT 6**
**FRAUDULENT OMISSION**
**(Individually and on behalf of the Ohio class)**

365.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

366.   Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

367.   Defendants were aware of the Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other Class Members.

368.   Having been aware of the Defect, and having known that Plaintiff and the other Class Members could not have reasonably been expected to know of this Defect, Defendants had a duty to disclose the Defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

369.   Defendants did not disclose the Defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

370.   For the reasons set forth above, the Defect in the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

371.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class Members reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles, such as the Defect. Had Plaintiff and the other Class Members known of the Defect in the Class Vehicles, they would have not purchased

1    the Class Vehicles or would have paid less for the Class Vehicles.

2        372.    Through their omissions regarding the Defect in the Class Vehicles,

3    Defendants intended to induce, and did induce, Plaintiff and the other Class Members

4    to purchase or lease a Class Vehicle that they otherwise would not have purchased, or

5    to pay more for a Class Vehicle than they otherwise would have paid.

6        373.    As a direct and proximate result of Defendants' omissions, Plaintiff and

7    the other Class Members either paid too much for the Class Vehicles or would not

8    have purchased the Class Vehicles if the Defect had been disclosed to them, and,

9    therefore, have incurred damages in an amount to be determined at trial.

10                        **PRAYER FOR RELIEF**

11        WHEREFORE, Plaintiff, individually and on behalf of the other Class

12    Members, respectfully requests that the Court enter judgment in their favor and

13    against Defendants Honda Motor Company Limited and American Honda Motor Co.,

14    Inc., as follows:

15        A.    An order certifying the proposed Class and designating the named

16    Plaintiff as the named representative of the Class and designating the undersigned as

17    Class Counsel for the Class;

18        B.    A declaration that the Engines and/or related components in Class

19    Vehicles are defective;

20        C.    A declaration that Honda is financially responsible for notifying all Class

21    Members about the defective nature of the Class Vehicles;

22        D.    An order enjoining Honda to desist from further deceptive distribution,

23    sales, and lease practices with respect to the Class Vehicles and directing Honda to

24    permanently, expeditiously, and completely repair the Class Vehicles;

25        E.    An award to Plaintiff and Class Members of compensatory, exemplary,

26    and statutory penalties, damages, including interest, including overpayment and

27    diminution in value damages, and punitive damages, in an amount to be proven at

28    trial, as well as other damages available at law;

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

F.     An award to Plaintiff and Class Members for the return of the purchase or lease price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale or lease, and damages;

G.     A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Defect in Plaintiff's and Class Members' Class Vehicles, can be made and paid, such that Honda, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defect;

H.     A declaration that Honda must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

I.     An award of attorneys' fees and costs, as allowed by law;

J.     An award of pre-judgment and post-judgment interest, as provided by law;

K.     Leave to amend this Complaint to conform to the evidence produced at trial; and

L.     Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: January 12, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
ADAM M. BUCCI (327312)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com
abucci@bholaw.com

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III
H. CLAY BARNETT, III
J. MITCH WILLIAMS
DYLAN T. MARTIN
TRENTON H. MANN
218 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@BeasleyAllen.com
Dylan.Martin@beasleyallen.com
Trent.Mann@BeasleyAllen.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT